## Western Construction Company *v.* Romona Oölitic Stone Company.

[No. 5,872.  Filed April 2, 1907.  Rehearing denied October 17, 1907. Transfer denied February 7, 1908.]

1. Contracts.—*Building.—References to Other Contracts.—Inconsistencies.*—A contract between a stone company and a construction company, for the furnishing of stone as required by a contract between such construction company and a city, should be construed as though such city's contract formed a part of the stone company's contract, except where such contracts are inconsistent.  p. 237.

2. Same. — *Furnishing Stone. — Inspection. — Acceptance.*—A contract between a stone company and a construction company providing that the stone company shall deliver certain stone to the construction company, as was required by a contract between such construction company and a city, such stone to be subject to the inspection, acceptance and rejection of the chief engineer of said city, and delivery to be made at a certain station, requires such inspection, acceptance and rejection at such station; and a removal of the stone therefrom without inspection constitutes an acceptance of the stone so taken.  p. 238.

3. Sales.—*Inspection.—Contracts.*—The right of reasonable inspection is incident to an ordinary sale of goods; but the parties may lawfully contract for a different kind of inspection if they so desire.  p. 239.

4. Same.—*Inspection.—Failure of Inspector to Serve.—Contracts.— Discharge.*—Where parties contract for the sale and purchase of certain stone, to be inspected and accepted or rejected by a third party, who is not under the control of either party, and such third party fails or refuses to act, the contract is discharged, and no rights accrue thereunder to either party.  p. 240.

230    APPELLATE COURT OF INDIANA,

Western Construction Co. *v.* Romona, etc., Stone Co.—41 Ind. App. 229.

5. CONTRACTS.—*Breach.*—*Objection.*—*Continued Fulfillment by Other Party.*—*Estoppel.*—A stone company, by continuing to ship stone as required by its contract with a construction company, is not estopped to insist on the terms thereof, where it objected to the violation of its contract, and insisted upon compliance therewith. p. 241.

6. SAME.—*Sales.*—*Delivery.*—*Acceptance.*—A contract for the sale of stone to be delivered f. o. b. cars at a certain station, subject to inspection at such place is injuriously violated, where the purchaser removes such stone from the cars, hauls it a considerable distance and piles it on the streets to be used in a public building. p. 242.

7. SAME.—*Delivery of Stone.*—*Appeal from Inspector's Decision.*—*Estoppel.*—A company contracting to deliver stone f. o. b. cars at a certain station, to be there inspected, which contract was violated by the hauling of such stone, over the company's objection, to the site of a public building, where the stone was inspected by the city's chief engineer, is not estopped from insisting upon the right of inspection at such station by appealing from such engineer's rejection of such stone. p. 244.

8. SAME.—*Acceptance of Stone.*—*Unsuitableness for Contract Purposes.*—Where a construction company accepts stone shipped to it for the construction of a certain building, it is estopped from afterwards asserting that such stone was not fit for the building intended. p. 244.

From Superior Court of Marion County (64,706) ; *John L. McMaster,* Judge.

Action by the Romona Oölitic Stone Company against the Western Construction Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Stuart, Hammond & Simms,* for appellant.

*Miller, Shirley & Miller* and *Edenharter & Mull,* for appellee.

RABB, J.—The appellant, the Western Construction Company, entered into a contract with the city of Cincinnati to furnish material and construct a certain pump pit and other improvements, as set forth in the contract, and which involved the use of a large amount of stone. It was provided by the terms of the contract between the city and the appellant that the stone to be furnished "shall be of the best

grade of Bedford (Indiana) oölitic limestone; * * *
that it shall be of durable quality and sound in every par-
ticular; that it shall be free from soap stone and shale,
seams and flaws of any description, and shall be quarried in
time to season thoroughly before being used; that all kinds
of stone shall be subject to the approval of the trustees, or
the chief engineer acting under their direction, who must
have satisfactory evidence of their weathering qualities."

It was provided further in said contract that

"said trustees may, at pleasure, appoint and employ,
at their own expense, such officers as may be necessary,
who are to act as engineers, inspectors or agents for
the purpose of supervising, in said first party's (city
of Cincinnati's) interest, the materials furnished and
work done as the same progresses; that such officers
shall have authority to reject any materials which do
not in their opinion conform to the plans and draw-
ings, specifications and contracts, and it shall be admis-
sible for them to do so at any time during the progress
of the work until its completion and acceptance, not-
withstanding the fact that such defective materials
may have been previously overlooked and received."

A contract was entered into between the appellant and
appellee, whereby the appellee contracted to furnish the ap-
pellant the stone necessary to be used in said work; the
contract between the appellant and appellee providing as
follows:

"(A) Whereas, said construction company has en-
tered, or is about to enter, into a contract with the city
of Cincinnati, Ohio, to perform certain work, viz.: The
construction of pump pits, walls, conduit, revetment of
slopes, etc., and will require certain supplies and serv-
ices in performing the same; and, whereas, said con-
tractor (the Romona Oölitic Stone Company) desires
to furnish said construction company in whole or in
part with such supplies and services; now, therefore,
said contractor agrees to furnish and deliver f. o. b.
cars at Pendleton Shops Station (near Cincinnati),
Pennsylvania railroad, all dressed Bedford oölitic lime-
stone for walls, coping, and all other stone of the qual-
ity required to complete the contract entered into by

the Western Construction Company and the city of Cincinnati, as shown on the general and detail plans and under the specifications of this contract numbered thirty-two, for the Western Pumping Station. Blue prints and specifications will be furnished to the contractor, in order properly to get out suitable sizes and dimension stone, all in accordance with the attached specifications of the board of trustees. (B) The supplies and service furnished must be suitable for the purpose, and subject to the inspection and acceptance of the chief engineer or other duly authorized agent of the city of Cincinnati, which inspection and acceptance or rejection shall take place upon delivery of the stone as aforesaid. (C) The contractor agrees to begin the delivery of said dressed Bedford oölitic limestone on August 1, 1902, and to deliver regularly upon the completion of car-load lots, and to complete the same in full on or before October 1, 1902. (D) If the contractor shall fail in any of the matters of delivery, quality, rate or time, as before specified, the construction company shall have the right to declare the contract forfeited and void, or to procure said supplies or service from other parties, and to charge any excess in the cost of procuring the same over the price herein specified to the contractor, who hereby agrees to pay said excess. (E) Supplies offered or shipped under this agreement that are not in compliance with the conditions or specifications hereof, or that may be rejected by the engineer or agents of said city of Cincinnati, shall be used by said construction company as backing, and shall be paid for at the rate of $4.50 per cubic yard. (F) The contractor shall use care in properly loading the cut stone on the cars to avoid any breakage. Should any stones be injured in transit, the contractor will stand the loss. Should the construction company, by badly handling, cause a stone to be injured, the loss shall be borne by the construction company; the intention being that the stone shall be delivered to the construction company ready to set, in compliance with the plans and specifications for doing the work, as contracted. (G) Said supplies are to be shipped *via* cars and delivered at Pendleton Shops Station, Ohio. (H) In consideration of the faithful performance of the covenants and agreements of the contractor, the construction company agrees to pay the Romona Oölitic Stone Company therefor in the following manner, to wit: For all said Bedford

NOVEMBER TERM, 1907. 233

Western Construction Co. *v*. Romona, etc., Stone Co.—41 Ind. App. 229.

oölitic limestone suitable and acceptable for the purpose used, including face stone, coping, etc., as required, of the kind known as 'buff color,' so delivered in any calendar month, and invoiced by the fifth of the next succeeding month, payment shall be made between the fifteenth and twenty-fifth days of said succeeding month, at the rate of $8.50 per cubic yard, measurements to determine a cubic yard being based upon the bottom beds of stones dressed or minimum quarry or square measure, all f. o. b. Pendleton Shops Station, Ohio. Minimum sizes shall be shipped, but should any excess be received, said excess shall be considered as backing, and compensation allowed on the basis of concrete backing—$4.50. The thickness of courses shall conform to sizes mentioned on last page of the agreement. The construction company will pay freight charges upon the stone and charge the same to the contractor, who will allow said payments on his account, by a credit. Twenty per cent of all amounts due the contractor under this agreement shall be retained by the construction company until the completion of the contract and the acceptance by the chief engineer of the stone, when the amount so retained will become immediately due, and shall be paid by cash. Strikes and inability to secure cars or other causes beyond the control of the contractor, causing a delay, would be causes for an extension in fulfilling the order. Any stone which might be broken or unfit for face stone and can be used as backing, shall be so used, permission of the chief engineer having been heretofore obtained. (I) It is mutually agreed that there are no oral reservations or modifications between the parties affecting the conditions hereof; that no subsequent changes or alterations of these terms shall be binding unless agreed to in writing over the signatures of both parties hereto.''

Under this contract the stone company shipped to the place of delivery at Pendleton Shops Station forty-four car-loads of stone. The construction company took the stone from the cars and hauled it on wagons from Pendleton Shops Station to the site of the work, a distance of three-quarters to a mile, and stacked it up ready for use when required. But three car-loads of the stone were inspected by the city engineers on board the cars at the place of delivery

at Pendleton Shops Station. A part of the stone on the first car was rejected, and a part of it accepted. The second and third car-loads were rejected at the time by the city engineers, but afterwards some of the stone was accepted and used in the work. All of the stone was, before being used, inspected by the city engineers at the site of the work, and all of it was rejected, except about eighty-six cubic yards of the stone, which was accepted and used in the face walls of the work that was referred to in the contract between the parties. The residue of the stone was used as backing. It does not appear from the evidence whether the city's inspecting engineers, who were agreed upon in the contract between the appellant and the appellee as being the persons who were to inspect and accept the stone contracted for at the place of delivery at Pendleton Shops Station, were ever informed of what was required or expected of them by the terms of the contract between the appellant and the appellee. They declined at all events to inspect and accept or reject the stone at the place of delivery, and would only consent to inspect and pass upon the quality of the stone as complying with the contract, or otherwise, at the site where the stone was to be used, and at the time when the stone was ready to be used in the work. No notice was given by the appellant to the appellee that the stone was not being inspected and accepted or rejected by said city engineers on delivery, as required by the contract, and the appellee had no knowledge that such inspection was not being made, until September 24, and after about one-half the stone had been shipped, when it was informed by the city engineers that no such inspection had been had, and that no such inspection would be made, and that the stone shipped would be inspected by them only at the site of the work. Appellee at all times insisted that the terms of the contract with reference to the inspection and acceptance or rejection of the stone at the place of delivery be complied with, and it never at any time consented to the removal of the stone from the

NOVEMBER TERM, 1907. 235

Western Construction Co. v. Romona, etc., Stone Co.—41 Ind. App. 229.

cars, or from the place of delivery, without such inspection and acceptance having first been made; but, with the knowledge that the inspection was not being so made, the appellee appealed from the judgment of the chief engineer, in reference to the quality of the stone furnished as being in compliance with the contract, to the board of trustees of the city, and its appeal was not sustained by said board. The appellee furnished to the appellant with each car-load of stone shipped an invoice of the stone, showing the amount of the stone claimed by appellee as being in compliance with the contract for face stone, and the amount that would be covered by their contract with reference to backing. The appellee continued to ship stone after September 24, with the knowledge that it would not be inspected and accepted by the city engineers, or those representing the city, at the place of delivery, as provided in the contract between appellant and appellee, up until the ———— day of ————. On November 1 appellee demanded of the appellant payment for stone shipped up to the first day of October, and gave notice that unless payment was made within five days the contract would be treated as abandoned by the appellee, and thereafter no further stone was shipped by the appellee to the appellant under said contract. It is not disclosed by the evidence whether if all of the stone received by the appellant from the appellee and transported to the site of the work, without inspection on board the cars at the place of delivery, had been used by the appellant in the work, it would have been sufficient to complete the work as the contract contemplated. It does appear that, on account of the refusal of the city engineers to accept the stone furnished by the appellee to appellant, the appellant was compelled to go into the market and purchase stone at a greatly increased price to complete the work, so far as it was completed, and the appellant was compelled to expend $———— in recutting stone furnished by the appellee in order to make it fill the terms of the contract.

236     APPELLATE COURT OF INDIANA,

Western Construction Co. *v.* Romona, etc., Stone Co.—41 Ind. App. 229.

The cause was tried by the court without a jury, a finding resulting in favor of the appellee, and judgment for the full contract price of the stone. A motion for a new trial was made by the appellant, overruled by the court, an exception taken, and this ruling of the court is assigned as error. The decision of the appeal in this case depends upon the construction to be given to the contract between the parties. Appellant contends that a proper construction of the contract requires it to pay appellee the full contract price of $8.50 per cubic yard for only such stone furnished by appellee as was accepted by the city's inspecting engineers for use in the face walls and arches of the pump pit, amounting to over eighty-six cubic yards, and to pay the minimum price of $4.50 per cubic yard for the balance of the stone shipped by appellee to appellant, and which was used as "backing" for the wall; that appellee is answerable to appellant for a breach of the contract in failing to supply appellant with sufficient stone to complete its contract with the city, and that the measure of damages is the difference between the contract price of the stone and the price appellant was compelled to pay in the open market for the same. It is insisted in argument that the contract between the city and the appellant in its entirety is to be read into the contract between appellant and appellee. It is insisted, on the other hand, by appellee, that the removal by appellant of the stone from the cars at the place of delivery to the site of the work, without inspection or acceptance or rejection by the city's inspecting engineers, and without the consent of the appellee, was a waiver of such inspection, and an acceptance of the stone by appellant, and conclusively bound the appellant to pay for the stone as invoiced to it by the appellee at the time of shipment. The contract between the city of Cincinnati and appellant most clearly and explicitly conferred the right upon the city to reject at any time, even after the stone was in the wall, any stone which its inspecting engineers should condemn. The express terms of the

contract between the appellant and appellee as clearly and explicitly provides that the inspection and acceptance or rejection of the stone shall take place upon delivery of the stone as aforesaid, which "aforesaid" was f. o. b. the cars at Pendleton Shops Station. Clause H of the contract between appellant and the appellee, imposing the obligation on appellant to pay for the stone furnished, provides that appellant shall pay appellee $8.50 per cubic yard for all said Bedford oölitic limestone suitable and acceptable for the purpose used. It is further provided that "twenty per cent of all amounts due the contractor under this agreement shall be retained by the Construction Company until the completion of the contract and the acceptance by the chief engineer of the stone." Clause E of the contract provides that supplies, meaning stone, shipped under the agreement, that are not in compliance with the conditions, or that may be rejected, are to be used by the construction company at a price of $4.50 per cubic yard. In clause F it is provided that the contractor shall stand the loss from injury in transit, the construction company to stand breakage caused by them in handling the stone. Clause II also provides, with reference to the payment for the stone, that the construction company shall pay for all stone suitable and acceptable delivered in any calendar month and invoiced by the fifth of the next succeeding month, which payment shall be made between the fifteenth and twenty-fifth days of said succeeding month.

We quite agree with the learned counsel for appellant that in construing the contract between the parties the contract entered into between the city of Cincinnati and 1. the appellant must be read into the contract between appellant and the appellee, so far as the provisions of the same will apply and are consistent with the express contract signed by the parties. But we hold that, where the terms of the two contracts are inconsistent, the contract the parties have made between themselves must govern. In

this case there is an inconsistency between the terms of the contract between the parties hereto and the terms of the contract between appellant and the city as to the time when, and the place where, inspection and acceptance or rejection of the stone should take place. The contract between the parties expressly requires that the inspection and acceptance or rejection of the stone shall take place at the time and place of delivery, to wit, on board the cars at Pendleton Shops Station, on delivery. The contract between the city and the appellant admits of the inspection and acceptance or rejection of the stone at any time or place, even after the stone has been put in the wall.

But it is insisted by appellant that subsequent clauses in the contract between the parties are to the effect that the appellant is to pay the contract price of $8.50 for such stone only as is acceptable for the purpose used; that the term "acceptable," as used in the contract, means acceptable to the inspecting engineers of the city; that the construction company shall retain twenty per cent of the amount due the contractor under the agreement until the completion of the contract and the acceptance of the stone by the chief engineer; that these provisions must be construed along with the clause with reference to the time and place of inspection, and that so construing the contract it must be held to mean that the construction company binds itself to pay the contract price for such stone only as shall be acceptable to the inspecting engineer of the company whenever and wherever the inspection shall be made. We cannot agree with this contention. The expressions contained in the clause of the contract regarding the payment for the stone, and regarding the withholding of the twenty per cent until the stone shall have been accepted by the chief engineer, are not inconsistent with the clause providing for the inspection at the time and place of delivery. Every expression contained in the contract must be given a meaning, if that can be done, consistent with every other

part of the contract. It is to be presumed that the parties meant something by every word expressed in the writing, and there is no inherent inconsistency between these provisions of the contract. The acceptance by the chief engineer, referred to in clause H, must be construed as meaning the acceptance made at the time and place provided for in the contract, and not elsewhere. We hold that the parties are conclusively bound by the terms of their contract, and that the provisions of the contract between appellant and appellee, that the stone should be inspected, and accepted or rejected on delivery, govern their rights, and not the provisions of the contract between appellant and the city of Cincinnati in reference to the inspection and acceptance of the stone.

It is insisted by appellant that the appellee never intended to comply with the contract on its part; that it knew when it shipped the stone from the quarry that it would not be accepted by the city engineers, and that knowing this fact the appellee shipped the stone in such condition that it could not be properly inspected at the place of delivery, and that the city's inspecting engineers refused to make such inspection any place except at the site of the work, and that it was therefore necessary for the appellant to remove the stone to the place where it could be inspected.

3. In ordinary contracts for the sale of goods to be shipped by the seller to the buyer, it is the duty of the buyer to inspect and accept or reject the goods sent, within a reasonable time, and for the purpose of inspection he has the right to receive the goods and do whatever is necessary to make a proper inspection, and such acts will not constitute an acceptance of the goods on his part; and if, on inspection, they turn out to be defective, the buyer has the right to reject them.

But the parties can make whatever contract they please regarding the inspection and acceptance of goods sold, and, when made, their contract will govern. They can make a

240    APPELLATE COURT OF INDIANA,

Western Construction Co. v. Romona, etc., Stone Co.—41 Ind. App. 229.

contract that imposes upon some one other than the buyer the duty of inspecting and determining whether or not the goods fill the conditions of the contract, and this these parties did. By their agreement they imposed the duty of inspecting and accepting or rejecting the stone upon the inspecting engineers. They made them the judges of whether the stone filled the conditions of the contract, and by their decisions both parties to the contract were bound. They were, in a sense, the agents of both parties, and yet they were under the control of neither. Neither the appellee nor the appellant had power or authority to compel the inspecting engineers to perform the office their contract imposed upon them. If they refused to inspect the stone, there was no way in which the appellant could compel them to act, and no way in which the appellee could compel them to act, and their refusal to serve them for the purposes contemplated by their contract could not be attributed as a default either to the appellant or the appellee. The result in that case would be that the provision of the contract regarding inspection on board the cars at Pendleton Shops Station would become impossible of performance; and if the act that was required to be performed by such third person, and which neither of the parties could compel said engineers to perform, was of the essence of the contract, and both parties to the contract refused to waive its performance, the contract would necessarily fall to the ground, for the reason that it became impossible of performance, and neither the appellant nor the appellee would have any right of action against the other on account thereof.

In this case the appellant had the unquestioned right under the contract to require the acceptance of this stone by the city's inspecting engineers before it could be required to accept the same from the appellee as a compliance with the terms and conditions of the contract. Upon the refusal of the inspecting engineers to act in the matter, it had the

undoubted right to refuse to take the stone from the car. It is equally clear, we think, that the appellee had the right to require that the stone should be so inspected and accepted before being removed from the car. But in that case the stone continued to be the property of the appellee, and upon such state of facts we think that it was the duty of the appellant to refuse to accept the stone, and at once to notify the appellee that their chosen arbiter, whom their contract had fixed upon to inspect and accept or reject the stone, refused to act for them as their contract contemplated, and then the subject would stand for the further consideration of the parties, and they could either abandon their contract or make such other provision, with reference to the inspection and acceptance of the stone, as they chose. This, however, appellant did not do.

It assumed dominion over the stone, without notice to the appellee of the refusal of the engineers to inspect it on board the cars at the place of delivery. It received the stone from the railroad company and transported it on wagons to the site of the work, a considerable distance away, where it was piled up and left until such time as the engineers chose to inspect it. It is true that the appellee subsequently learned of the refusal of the inspecting engineers to inspect the stone on board the cars, and, with this knowledge, continued to ship stone to appellant; but it also appears that at all times appellee insisted that the stone should be inspected as the contract required, and that at no time did it consent to appellant's removing the stone from the car without such inspection; that the appellant, with full knowledge of this insistence upon the part of the appellee, continued to receive the stone and to transport it from the cars to the site of the work. If, therefore, the inspection and acceptance or rejection of the stone at the time and place of delivery were of the essence of the contract, and affected the material rights of

242    APPELLATE COURT OF INDIANA,

Western Construction Co. v. Romona, etc., Stone Co.—41 Ind. App. 229.

the appellee, then it must follow that the appellant has waived the right to the inspection and acceptance of the city engineers, and, under the authorities, it must be held to have accepted the stone as complying with the terms of the contract.

If these acts were not of the essence of the contract, then such result would not follow; that is, if it could make no difference to the substantial rights of the appellee whether the inspection was had on delivery or at the works, or as the stone went into the work, then the appellee could not complain of the fact that the stone had been removed by appellant from the cars and transported to the site of the work, because the contract contemplated that, whatever might be the result of the inspection, the appellant was bound to receive and use all the stone shipped to it—that which was rejected as well as that accepted by the inspecting engineers. The stone rejected was to be used by the appellant as "backing," and paid for at a cheaper price, but all was to be received.

There are three material respects in which we think the rights of the appellee would be affected by a failure to inspect and accept or reject the stone according to the terms of the contract. The contract provides for the shipment of dressed stone, ready to be placed in the wall. It provides that for all damage done to the stone in transit the appellee shall be responsible. For all damage done to the stone in handling the same by the appellant, after it has received the stone, the appellant shall be liable.

The evidence shows that from the character of the stone it was liable to be chipped and damaged both in shipment on the cars and in removing from the cars, transporting on the wagons, and in unloading from the wagons and stacking up in the yards. It further shows that damage was done to a great many stones in this way. Whether this damage resulted from transportation on the cars, or whether it resulted from handling the stone in unloading it from

NOVEMBER TERM, 1907.            243

Western Construction Co. v. Romona, etc., Stone Co.—41 Ind. App. 229.

the cars, transporting it in wagons, and unloading it at the site of the work, could not be determined; and inspection of the stone on the cars as contemplated by the contract would render certain and fixed the damage on this account that the appellee would be responsible for. And, again, the contract required the payment to the appellee for the stone shipped, invoiced and accepted by the appellant within a certain time. If the inspection and acceptance of the stone were deferred until it went into the work, then it could not be determined how much would be due appellee when the time fixed by the contract for its payment would arrive. Appellee had the right to insist that the stone should be inspected and accepted or rejected at the time of delivery, so as to fix certainly the amount that would be due it from the construction company on account of the stone.

There was another element in the contract that was important to the appellee: It could not be determined what quantity of stone would be required to comply with the terms of the contract until the stone was inspected and accepted. Prompt inspection and notice to the appellee of the stone as it was received would enable the appellee to gauge the quality and grade of stone shipped, and prevent its sending an unnecessary amount of dressed stone to be used as "backing" at the price paid for much cheaper material. It was unfair to the appellee to defer inspection until it had shipped a sufficient quantity of dressed stone to fill its contract, and then inspect and reject ninety per cent of it, and use the stone shipped for face work at $8.50 per cubic yard for concrete filling at $4.50 per cubic yard. Appellee was contracting to supply the dressed stone for the work, not the concrete "backing." The provisions of the contract in reference to the use of the rejected stone was a mere incident, intended to save the appellee the costs of transportation, not a source from which profits were to be expected.

We do not think the action of the appellee, either in ap-

pealing from the decision of the chief engineer, or in shipping stone after it knew that the inspecting engineers of the city would not inspect it on board the cars, constituted either an .estoppel against it from insisting upon the inspection, as provided in the contract, or a waiver of such inspection. It shipped the stone as the contract provided it should, and at the same time demanded that it be inspected as the contract provided; and when that was done it became a question for the appellant to determine whether they would waive the inspection and acceptance by the engineers and take the stone, or whether they would stand upon their rights under the contract and refuse to accept the stone without such inspection.

Nor do we see how the appellant can be entitled to anything under its counterclaim. The burden rests upon the appellant to show that there is something due it under the counterclaim; and from aught that appears in the evidence, the cut stone shipped by appellee and received by appellant, if used in the work, would have been amply sufficient to complete the contract. For this reason appellant would not be entitled to recover. Bound by its acceptance of the stone, it would not help the case that the city refused to use it. By accepting the stone without the inspection and acceptance provided for in the contract, it took the chance of the city's permitting it to be used in the work. If the appellee supplied stone in sufficient quantities to complete the work, that was the end of the contract. That it was not used for the purpose could not be attributed to the appellee. Nor can the appellee be held to have violated its contract in refusing to ship stone when it is conceded that it would not be inspected and accepted as the contract provided it should be.

We conclude that the receipt of the stone by the appellant from the railroad, without its having been inspected or accepted or rejected by the inspecting engineers, and transporting it to the site of the work, taking it under its

own dominion, beyond the control or dominion of the appellee, thereby made the stone its property, and it is estopped from asserting that the same did not comply with the requirements of the contract.

Other questions are discussed by counsel in their brief, but we do not deem it necessary to consider them.

Judgment affirmed.