## PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* KNOX.

[No. 21,968. Filed April 16, 1912.]

1. CARRIERS. — *Delay in Delivery.* — *Action.* — *Complaint.* — *Sufficiency.*—In an action against a railroad company for delay in delivery of a shipment of corn to Pittsburgh, consigned to the order of plaintiff, with directions in the bill of lading to notify plaintiff's agents, the allegations of the complaint, that when the corn arrived at defendant's yards near Pittsburgh it was in good condition, that it was the property of plaintiff and on that day was sold by plaintiff's agents at its then value, that defendant negligently and carelessly failed to deliver said corn to the purchaser until several days thereafter, and that by reason of the delay it was spoiled so that plaintiff was compelled to and did sell it for a reduced price, do not show an executed sale by the plaintiff's agents, and such complaint sufficiently states a cause of action in the plaintiff. pp. 347, 352.

2. SALES.—*Sale of Property in Transit.*—*Consummation.*—A sale of property in transit by assignment of the bill of lading is not consummated until inspection and acceptance by the buyer, since the right of inspection, unless waived, is absolute. p. 350.

3. CARRIERS.—*Delivery of Goods.*—*Place of Delivery.*—*Complaint.* —Where the complaint in an action for delay in delivery of corn affirmatively shows that the corn was consigned to the order of the shipper, delivery to another at a point short of the point to which it was consigned will not be inferred. p. 351.

4. SALES.—*Executory Contract.*—*"Sold."*—The use of the word "sold" does not necessarily imply a change of title, and its use in executory contracts of sale means "contracted to sell." p. 351.

5. CARRIERS.—*Delivery of Goods.*—*Duty of Carrier.*—It is the duty of a carrier of goods to transport and deliver the same with reasonable promptness. p. 352.

6. CARRIERS.—*Delivery of Goods.*—*Action for Failure to Deliver.* —*Negligent Delay.*—*Complaint.*—A complaint which alleges that a carrier carelessly and negligently failed to deliver freight promptly, by reason of which the freight was spoiled and the plaintiff thereby specially damaged, sufficiently charges an actionable negligence. p. 352.

7. COURTS.—*Carriage of Freight.*—*Negligent Delay.*—*Jurisdiction.* —The state court has jurisdiction in an action by a shipper for damages against a carrier for negligent delay in a shipment of freight from a point in this State to a point in another state. p. 352.

Pittsburgh, etc., R. Co. *v.* Knox—177 Ind. 344.

8. CARRIERS.—*Negligent Delivery of Goods.—Measure of Damages.* —In an action for negligent delay in delivery of a shipment of freight whereby the freight was damaged and had to be sold at a loss, the measure of damages, in the absence of contract, is the difference between the market value at destination when the goods should have arrived and the value at actual delivery. p. 353.

9. APPEAL. — *Admission of Incompetent Evidence. — Presenting Question for Review.*—No error in the admission of incompetent evidence can be taken advantage of on appeal, unless the attention of the trial court was called to the same and an opportunity given to correct it.   p. 353.

10. APPEAL.—*Cause Tried on Wrong Theory.—Incompetent Evidence.—Failure to Object.—Not Cause for Reversal.*—In an action for delay in delivery of a shipment of goods, where the bill of lading provided that damages in case of loss were to be assessed at the value of the property at the place and time of shipment, and the complaint was drawn on the theory of the difference in values at the place for delivery, and on the trial both parties acted on the latter theory and the only evidence introduced was in support thereof and was admitted without objection, and where the real ground of defense was that plaintiff was not the owner of the goods at the time they were injured, the cause will not be reversed on appeal on the ground that the evidence was insufficient to sustain the verdict.   p. 354.

11. CUSTOMS AND USAGES.—*Contract for Transportation.—Custom. —Effect.*—Where the contract for transportation was to deliver goods at Pittsburgh, and the evidence showed that the carrier maintained yards three miles from the city of Pittsburgh, where shipments consigned to Pittsburgh are received and examined by inspectors for brokers, and the bill of lading surrendered and a way-bill issued in lieu of it indicating the point of delivery in the city, and the shipment is then delivered at the place indicated, and that these customs and usages had existed for years, such customs and usages are presumed to have been in the contemplation of both parties and became a part of the contract, and under it there was no delivery at the yards.   p. 355.

12. CARRIERS.—*Initial Carriers.—Liability.*—Under §9 of the Interstate Commerce Act (24 Stat. p. 382, 3 U. S. Comp. Stat. 1901 p. 3159) the initial carrier is expressly made liable for a continuous carriage, and a contract to the contrary is invalid.   p. 356.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by John Knox against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company.   From a judgment

for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*G. E. Ross,* for appellant.

*J. T. Cox* and *Claude Y. Andrews,* for appellee.

MYERS, J.—Appellee and his copartner, Houck, by a complaint in five paragraphs, instituted this action against appellant as a common carrier. The first and second paragraphs alleged the ownership of two carloads of corn, of 992 and 974 bushels, respectively, the entry into a written contract with appellant, a common carrier—which contract is made an exhibit of each paragraph—for the shipment of the corn from Converse, Indiana, to Pittsburgh, Pennsylvania, consigned to their order, with written directions in the bill of lading to notify Daniel McCaffrey & Sons, their agents, and paid the freight charges; that the corn arrived at appellant's Manchester yards, near Pittsburgh, November 15, 1905, cool and sweet and in good condition; that said agents on said last-mentioned date sold both cars of corn to the Pittsburgh Union Stock-Yards at fifty-two cents a bushel, and that was its value; that appellant carelessly and negligently failed and neglected to deliver the corn until November 21, 1905, and that during the period from November 15, 1905, to November 21, 1905, by reason of said negligence, the corn heated and spoiled, so that the value thereof was reduced to twenty cents a bushel, and said agents were compelled to sell it at that price. Performance of all the conditions of the contract on appellee's part, including making claim for the loss within thirty days, is alleged, and damages are demanded on each car shipped November 8.

The third paragraph is the same, except that it alleges shipment November 14, its arrival cool and sweet at the Manchester yards on November 15, sale at fifty-two cents a bushel that day, negligent failure to deliver until November

29, its spoiling in the interval, by reason of said negligence, and its value thereby reduced to twenty cents a bushel.

The fourth paragraph counts on the two shipments of November 8 as made without written contract, and alleges the agreement of appellant to transport and deliver the corn to appellee's order in the city of Pittsburgh, but carelessly and negligently held it in or near that city six days, during which time the corn spoiled.

The fifth paragraph is the same as the fourth, except it counts on the shipment of November 14, and alleges receipt at the Manchester yards on November 20. The fourth and fifth paragraphs are claimed to be based on §3918 Burns 1908, Acts 1905 p. 58.

The cause was submitted to a jury on an answer of general denial, and at the close of appellee's evidence, appellant demurred to the evidence, and it was agreed that if the demurrer should be overruled the court "may assess the damages on the evidence in the demurrer," without recalling the jury. Appellee joined in the demurrer, which was overruled, and the court assessed the damages, and, over motion for a new trial, judgment was rendered for appellee, whose partner Houck had died pending the suit, as was disclosed by a supplemental complaint.

The errors assigned and not waived are on the rulings on the demurrers to each paragraph of the complaint, in overruling the demurrer to the evidence, and in overruling the motion for a new trial.

As to the first, second and third paragraphs of complaint, the ground of objection as to each is that in each it is alleged that the corn arrived at the Manchester yards,

1. near Pittsburgh, cool and in good condition, and that on the day of its arrival appellee's agents "sold the corn * * * for plaintiff to the Pittsburgh Union Stock-Yards and that the defendant company negligently and carelessly neglected and refused to deliver it," until it heated

and spoiled, the contention being, that as it is averred that it was sold, the damage, if any, accrued to the vendee and not to plaintiff, and that no negligence in transportation is averred, but, at most, delay after plaintiff's title ceased. As to the fourth and fifth paragraphs, there is no allegation of sale of the corn, but that by reason of the delay it spoiled and they were damaged thirty-two cents a bushel. If appellant's contention is correct as to these points, the judgment must be reversed.

If the allegation quoted stood alone, or without anything in qualification, the court would doubtless be required to treat it as amounting to an allegation of a consummated sale. The allegation in the first, second and third paragraphs is, however, "that said corn was the property of these plaintiffs, and their said agents sold the said corn on said day to the Pittsburgh Union Stock-Yards at fifty-two cents per bushel. That said corn was then and there of the value of fifty-two cents per bushel. That defendant company negligently and carelessly neglected and refused to deliver said corn to said purchaser until the 21st day of Nov.," in one case, and in the other, "until the 29th day of Nov., 1905. That during said period from Nov. 15th to Nov. 21," in one case and "from Nov. 20 to Nov. 29" in the other, "the said corn heated and spoiled by reason of defendant's said negligence, so that the value thereof was no more than twenty cents per bushel," as to two cars, and "twenty-five cents per bushel" as to one car, "which was the best and highest price they [plaintiffs] could obtain therefor, and they were compelled to, and did sell for those prices."

Taking the allegations together, they did not allege an executed sale, or a "bargain and sale" at common law, but an executory contract, or contract to sell.

Into this allegation must be read the proposition of law of the right of inspection, and the right of refusal of the contemplated buyer, and its right to reject that which it had not purchased.

The allegations disclose an agreement, in effect, to deliver; and clearly one who buys an article worth fifty-two cents a bushel when he buys, but which at delivery, because of its condition, is worth only twenty or twenty-five cents a bushel, is not required to accept it; so that unless we can say that delivery was made at the Manchester yards, it is clear that there was no sale, no parting with, nor vesting of title. Delivery was as essential as any other thing, and the allegation is that appellant "negligently and carelessly neglected and refused to deliver" for such a length of time that the corn spoiled, which is a negation that delivery was made at the time that appellant claims a sale is alleged.

Stated reversely: Suppose the stock-yards company had sued defendant and his copartner for a breach of contract to deliver corn purchased, could the latter have successfully defended the suit by showing that said company agreed to take so much corn of such and such a quality at so much a bushel? Would he not have been compelled to show that he had delivered it, or stood ready to deliver, and that it was of the quality agreed on?

The court cannot judicially know anything about the situation of the Manchester yards, or what relation, if any, they have to a contract to deliver in Pittsburgh.

The allegation of the complaint is that the corn arrived "at the Manchester yards *near* said city of Pittsburgh." On the face of the record, that is a showing that the corn was in transit. A sale and assignment of the bill of lading might have been made in transit; so the allegation is, in effect, of a sale while at the Manchester yards, or while in transit, delivery to be made at Pittsburgh, and impliedly subject to the right of inspection. In the absence of anything to the contrary, a sale while the corn was at the Manchester yards was not a delivery at Pittsburgh, with a contract to deliver there to appellee, to whom he or his agents might direct in consummation of the contract of carriage, and the allegation that it was sold, coupled with the other allegations, shows no

more than a contract to sell, which was not consummated by acceptance, for it is alleged that they were compelled to sell the corn at a greatly reduced price.

Suppose the bill of lading had been formally assigned, and forwarded and received at the stock-yards. A

2. sale would not have been consummated until inspection and acceptance.

It may be conceded that the allegation that they had sold the corn is not an apt one, but, taken in connection with the other allegations, a contract to sell is shown, and not an executed sale.

A present acceptance is not shown, because coupled with the allegation is that of failure to deliver until the corn was spoiled, showing that delivery was to be made by appellee. Clearly there is not a showing of the meeting of minds, or understanding, or intention or agreement that title passed at the Manchester yards.

The right of inspection, unless waived, is an absolute one. 2 Mechem, Sales §§1375, 1376, 1211-1214; *Gandy* v. *Seymour, etc., Stave Co.* (1912), 50 Ind. App —, 90 N. E. 915; *Oil Well Sup. Co.* v. *Watson* (1907), 168 Ind. 603, 80 N. E. 157, 15 L. R. A. (N. S.) 868; *Farmers Nat. Bank* v. *Coyner* (1909), 44 Ind. App. 335, 88 N. E. 856; *Warner* v. *Warner* (1903), 30 Ind. App. 578, 66 N. E. 760; *Western Construction Co.* v. *Romona, etc., Stone Co.* (1908), 41 Ind. App. 229, 80 N. E. 856; *Gatling* v. *Newell* (1857), 9 Ind. 572; *Moffatt* v. *Green* (1857), 9 Ind. 198; *Brand* v. *Weir* (1899), 57 N. Y. Supp. 731, 27 Misc. Rep. 212; *Sloan* v. *Carolina Cent. R. Co.* (1900), 126 N. C. 487, 36 S. E. 21; *Lyons & Co.* v. *Hill & Co.* (1865), 46 N. H. 49, 88 Am. Dec. 189; *Bach* v. *Levy* (1886), 101 N. Y. 511, 5 N. E. 345; *Swett* v. *Shumway* (1869), 102 Mass. 365, 3 Am. Rep. 471; *Hight* v. *Bacon* (1878), 126 Mass. 10, 30 Am. Rep. 639; *Fogel* v. *Brubaker* (1888), 122 Pa. St. 7, 15 Atl. 692; *Warner* v. *Arctic Ice Co.* (1883), 74 Me. 475; *Hood* v. *Bloch Bros.* (1886), 29

W. Va. 244, 11 S. E. 910; *Gerst* v. *Jones & Co.* (1879), 32 Gratt. 518, 34 Am. Rep. 773; *Breen* v. *Moran* (1892), 51 Minn. 525, 53 N. W. 755; *Best* v. *Flint & Newton* (1886), 58 Vt. 543, 5 Atl. 192, 56 Am. Rep. 570.

If delivery at the Manchester yards was a consummation of the contract of carriage, no further delivery could be required under the original contract; but the allegations show affirmatively that there was to be other delivery, and it was so understood by the parties, and it is for such failure that damages are claimed. We cannot infer that delivery should take place at any point short of the point to which the corn was consigned. It appears affirmatively that the corn was consigned to appellees, therefore there was no delivery to another, by the fact of consignment. *Sohn* v. *Jervis* (1885), 101 Ind. 578, 1 N. E. 73.

If the allegation could be treated as constituting a passing of title, conditioned upon inspection, and the quality was not as agreed, the contract could not be enforced against the alleged purchaser, and the damages would result to appellees, not to the stock-yards company. If the stock-yards company had brought suit, it would have been at once confronted with the fact that the corn was consigned to appellees, and was not accepted by or delivered to the stock-yards company.

4. Where a contract is executory, the word "sold" is held to mean contracted to sell. *Russell* v. *Nicoll* (1829), 3 Wend. 112, 20 Am. Dec. 670.

The use of the word "sold" does not necessarily imply a change of title. *Anderson* v. *Read* (1887), 106 N. Y. 333, 13 N. E. 292; *Gallup* v. *Sterling* (1898), 49 N. Y. Supp. 942; 22 Misc. Rep. 672; *Blackwood* v. *Cutting Pack. Co.* (1888), 76 Cal. 212, 12 Pac. 493, 9 Am. St. 199; *Shainwald, Buckbee & Co.* v. *Cady* (1891), 92 Cal. 83, 28 Pac. 101; *Brooks* v. *Libby* (1896), 89 Me. 151, 36 Atl. 66; *Kilpatrick-Koch, etc., Co.* v. *Box* (1896), 13 Utah 494, 45 Pac. 629.

Appellant's contention as to the force of the allega-
1.  tion being an executed contract, when taken with the
other allegations, cannot be upheld.

It is next urged as to the complaint, that it is not alleged
that appellant in any way violated the written contract, and
that no facts are alleged in any paragraph, to show appel-
lant guilty of actionable negligence. It was appel-
5.  lant's duty to transport and deliver with reasonable
promptness. Hutchinson, Carriers (3d ed.) §§652,
653 and cases cited.

It is alleged that there was careless and negligent refusal
to do so until the corn spoiled. As the law implies the duty,
it is sufficient to charge that it was carelessly and neg-
6.  ligently omitted for such a length of time that the
corn spoiled, to appellee's damage. Whether there
was unreasonable delay, and whether that occasioned the
damage, were questions for the jury. Mere delay, and in
some cases unavoidable delay, will not give rise to a cause
of action, but when it is alleged, as here, that by negligent
and careless refusal to carry and deliver, special damages
have arisen, it is sufficient on a pleading to send the question
of fact to a jury, for the reason, if no other, that as an
undertaking of safe carriage, and delivery, if there was any-
thing to excuse performance before the corn spoiled, appel-
lant was in a position, and it was its duty to disclose it.
Hutchinson, Carriers (3d ed.) §§265, 477-479; *Chicago, etc.,
R. Co.* v. *Woodward* (1905), 164 Ind. 360, 72 N. E. 558. 73
N. E. 810; 4 Elliott, Railroads (2d ed.) §1516.

Jurisdiction is sought to be ousted by the claim that the
state court had no jurisdiction of the cause, and that juris-
diction is wholly in the interstate commerce commis-
7.  sion, or in the federal courts, and reliance is placed
on *McNeil* v. *Southern R. Co.* (1906), 202 U. S. 543,
26 Sup. Ct. 722, 50 L. Ed. 1142. We are not able to per-
ceive the relevancy of that case. The point has been directly

ruled in this State and in other states, as well as in the United States Supreme Court. *Pittsburgh, etc., R. Co.* v. *Mitchell* (1910), 175 Ind. 196, 91 N. E. 735, 93 N. E. 996, and cases cited; *Galveston, etc., R. Co.* v. *Wallace* (1912), 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516; *Smeltzer* v. *St. Louis, etc., R. Co.* (1908), 158 Fed. 649; *Louisville, etc., R. Co.* v. *Scott* (1909), 133 Ky. 724, 118 S. W. 990.

On the evidence, the point is made that by the terms of the bill of lading damages in case of loss were to be assessed at the value of the property at "the place and time of shipment." There was no evidence given as to the value of the corn at Converse, but evidence went to the jury, without objection, as to its value at Pittsburgh. In the absence of contract, the difference between the market value at destination when the goods should have arrived and the value at actual delivery is the measure of damages. *Michigan, etc., R. Co.* v. *Caster* (1859), 13 Ind. 164; 1 Moore, Carriers 410 and cases cited; Hutchinson, Carriers (3d ed.) §1366. But it may be the subject of contract, as it was in this case.

The contention of appellee is that evidence, without objection, went to the jury as to the value of the corn at Pittsburgh, and that under the agreement between the parties, that in case the demurrer to the evidence was overruled "the court may assess the damages on the evidence in the demurrer" without calling a jury, the provision as to damages based on the value at Converse is waived.

The provision is printed in small type among a great many other conditions of the bill of lading, and was doubtless overlooked by the court and the parties, as there was no objection made to the evidence as to the value at Pittsburgh, and the question seems to have been first raised here on the motion for a new trial as to the insufficiency of the evidence and excessive damages, but there having been no objection

to the evidence on the trial, that cause was not assigned in the motion for a new trial.

It is elementary that no error can be taken advantage of on appeal from incompetent evidence, unless the attention of the court below has been called to it, and an opportunity given to correct it. *Indianapolis St. R. Co.* v. *Ray* (1906), 167 Ind. 236, 78 N. E. 978; *City of South Bend* v. *Turner* (1901), 156 Ind. 418, 60 N. E. 271, 83 Am. St. 200, 54 L. R. A. 396; *Barner* v. *Bayless* (1893), 134 Ind. 600, 33 N. E. 907, 34 N. E. 502; *Graves* v. *State* (1889), 121 Ind. 357, 23 N. E. 155; *Stockwell* v. *State, ex rel.* (1885), 101 Ind. 1; *Riehl* v. *Evansville Foundry Assn.* (1885), 104 Ind. 70, 3 N. E. 633; *Fitzpatrick* v. *Papa* (1883), 89 Ind. 17; *Shoemaker* v. *Williamson* (1901), 156 Ind. 384, 59 N. E. 1051; *Smith* v. *Smith* (1886), 106 Ind. 43, 45, 5 N. E. 411; *Kinney* v. *Dodge* (1885), 101 Ind. 573.

It is inconceivable, had the attention of the court below been called on the introduction of the evidence by objection or otherwise, or on the demurrer to the evidence to the provision in regard to the place where damages are to be fixed, that the objection or the demurrer to the evidence would not have been sustained. It seems clear from the evidence that both parties overlooked it, and treated it under the ordinary rule that damages are to be assessed at the place for delivery.

The complaint appears to have been drawn on the theory of the difference in values at Pittsburgh, and the evidence given on that theory without objection. Just what interpretation should be given the agreement of the parties is difficult to determine. In view of the evidence being received without objection, it is susceptible of the construction that the parties treated Pittsburgh as the place for determining values. If there had been an objection, the evidence would have been improperly admitted.

Without this evidence, there was no evidence to support appellee's claim under the contract, and he and the court

may have been misled, and the agreement seems to support the theory of the basis for damages being the value of said corn at Pittsburgh.

On the other hand, appellant may have had in mind that there was no basis for assessing damages on the demurrer to the evidence, but as appellant's real ground of defense was that appellee was not the owner, and had no right to maintain the action, and without the court's attention apparently having been directed to the matter, it does not seem to us to justify this court's interference at this late day.

Coming to the question of sale, under the evidence, it shows that the Manchester yards are three miles from the city of Pittsburgh, and are not receiving yards, but are inspecting and distributing yards; that when a shipment is received there, consigned Pittsburgh, it is examined by inspectors employed by the brokers, the bill of lading is surrendered, and a way bill issued in lieu of it, indicating the point of delivery in the city, or within the switching limits, and the car is then delivered at the place indicated, without other charge than the original freight. The yards are simply for convenience of appellant in making its deliveries. These customs and usages had existed for years, and are presumed to have been in the contemplation of both parties, and entered into the contract, and under them there was no delivery at the yards and no sale had been made.

When the corn was delivered at the stock-yards, it was rejected, because not what had been contracted to be sold. *Chicago, etc., R. Co.* v. *Reyman* (1906), 166 Ind. 278, 76 N. E. 970; *Rastetter* v. *Reynolds* (1903), 160 Ind. 133, 66 N. E. 612; *Morningstar* v. *Cunningham* (1887), 110 Ind. 328, 11 N. E. 593, 59 Am. Rep. 211; *Mand* v. *Trail* (1884), 92 Ind. 521, 47 Am. Rep. 163; *Pittsburgh, etc., R. Co.* v. *Nash* (1873), 43 Ind. 423.

Appellant's position as to its not being liable for negligence beyond its own lines is untenable. As the initial car-

rier, it is expressly made liable by the interstate com-
merce act for a continuous carriage, and the contract
to the contrary is invalid. Interstate Commerce Act
§9, 24 Stat. p. 382, 3 U. S. Comp. Stat. 1901 p. 3159; *Pittsburgh, etc., R. Co.* v. *Mitchell, supra; Atlantic, etc., R. Co.* v. *Riverside Mills* (1911), 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167; *Galveston, etc., R. Co.* v. *Wallace, supra.*

No reversible error is made to appear, and the judgment is affirmed.

Cox, J., did not participate in the decision in this cause.

Note.—Reported in 98 N. E. 295. See, also, under (1) 6 Cyc. 448; (2) 35 Cyc. 274; (3) 6 Cyc. 448, 515; (4) 35 Cyc. 275; (5) 6 Cyc. 442; (6) 6 Cyc. 448; (7) 11 Cyc. 996; (8) 6 Cyc. 449; 11 Am. St. 360; (9) 2 Cyc. 693; (10) 2 Cyc. 670; (11) 12 Cyc. 1061; (12) Cyc. Anno. (1913) 707. For authorities on the question of the liability of a connecting carrier for loss beyond its own line, see 31 L. R. A. (N. S.) 1.