ALACHUA PHOSPHATE COMPANY, PLAINTIFF IN ERROR, v. ANGLO-CONTINENTAL (LATE OHLENDORFF'S) GUANO WORKS, DEFENDANT IN ERROR.

1. As a general rule, where a contract is violated by one of the parties thereto, the other party is thereby released from the contract.

2. Where two companies execute a contract for the sale of phosphate rock to another company, the terms of which contract are considered as an entirety and are binding on all the parties thereto, and the contract on the part of the selling companies is violated, damages can not be recovered from the buying company for refusing to accept and pay for rock tendered by one of the selling companies for itself and as assignee of the other selling company.

3. Where there is evidence to sustain the finding of a referee it will not be disturbed on writ of error.

This case was decided by Division A.

Writ of Error to the Circuit Court for Marion County.

The facts in the case are stated in the opinion of the Court.

*W. W. Hampton,* for Plaintiff in Error.

*R. L. Anderson,* for Defendant in Error.

WHITFIELD, J.    Action was instituted in the Circuit Court for Marion County to recover damages for an alleged breach of contract.

The declaration in brief alleges that the defendant, the Anglo-Continental (late Ohlendorff's) Guano Works, on August 9th, 1893, bargained and bought of the plaintiff the Alachua Phosphate Company, a large quantity of phosphate rock and the plaintiff then and there sold to the defendant at its request "a large quantity, to-wit: ten thousand tons (ten per cent. more or less at defendant's option) of dried Florida hard rock phosphate" upon the terms stated in the contract herein set out; that subsequently, on January 7th, 1894, the said contract was by agreement between the plaintiff and the defendant changed by substituting the name of Dr. Gascoyne in the place of Dr. Grothe as chemist; that at the same time of the making of said contract between the plaintiff and the defendant and in and by the same written instrument the said defendant made the same contract with the Piedmont Phosphate Company and the plaintiff alleges that all the interests of the said Piedmont Phosphate Company in said contract has been assigned to the plaintiff by the said Piedmont Phosphate Company; that although

VOL. 51, JANUARY TERM, 1906.          145

Alachua Phos. Co. v. Anglo-Continental G. W.—Opinion of Court.

the plaintiff made due and lawful tender to the defendant of all phosphate rock in conformity to the contract between the plaintiff and the defendant at the time and in the manner and in the quantity required thereby, and was at all times able, ready and willing to perform its part of said contract, yet the defendant did not nor would not accept the rock as aforesaid or any part thereof from the plaintiff or pay it for the same as aforesaid, but refused to do so, and the plaintiff then and there gave notice to the said defendant that the plaintiff would sell the same; and the plaintiff then and there resold said phosphate rock at less than the contract price to plaintiff's damage.

Another count of the declaration makes similar allegations except that it alleges that the plaintiff being ready and willing and able at all times to perform its part of said contract in every particular, and being able, ready and willing to deliver the said phosphate rock in the quantity and of the quality and under the terms and conditions set forth in the said contract, and the said defendant refusing to perform said contract and declaring the same canceled, the plaintiff was compelled to and did sell such phosphate rock at a loss to the plaintiff.

The declaration also contains common counts, but no evidence was introduced to sustain them.

Several pleas were filed and issue was joined on all of them except one to which a replication was filed. The contract of August 9th, 1893, and the modification thereof dated January 7th, 1894, which are referred to in the declaration are as follows:

"Ocala, Florida, July 1st, 1893.

## PURCHASE.

We have this day bought of you about five thousand (5000) tons of Dried Florida Hard Rock, guaranteed to contain a minimum of 75 per cent tri-basic phosphate of lime, and not more than 3 per cent. of iron and alumina combined, but if over 3 per cent. and not over 4 per cent., an allowance to be made of 3 cents for every tenth per cent. iron and alumina in excess of 3 per cent.

## PRICE.

Moisture not to exceed 2 per cent., $6.00 per ton of 2240 lbs. free on board of cars at mines, on railroad proper, provided the analysis is 80 per cent., should the analysis be under 80 per cent., an allowance to be made of twenty cents per unit down to 75 per cent.

## SHIPMENT.

About three thousand tons (3000) in 1893 at buyer's option, and as sellers can arrange, and balance during first half of 1894. Buyers to give sellers at least ten days notice of readiness of vessel, for which phosphate is required, to be supplied at not less than 200 tons per day.

## SAMPLING.

To be done on shipment at port at seller's expense, but buyers have the option of being represented. Samples to be analyzed by Dr. Grothe and Mr. Gibbons, and the mean of the two to be taken as basis of invoice, unless there is a difference of over 1 per cent., when a third sample to be

analyzed by Dr. Shepard, and the mean of the two nearest to be taken for invoice, all fees to be divided. Railroad weight to be taken, but 1 per cent to be allowed off same. Moisture 212 degrees Fht. to be deducted from weights.

PAYMENT.

Net cash, New York, on receipt of final test.

OPTION.

Buyers to have option to take further five thousand (5000) tons, on above terms and conditions, shipment of which would be during 1894, about fifteen hundred (1500) to two thousand (2000) tons every three months.

This option to be declared by buyers not later than the 1st of August, 1893.

C. THALHEIM,

For the Anglo-Continental Guano Works.

JAS. M. GRAHAM, G. M.

Piedmont Phosphate Company.

Ocala, 9th August, 93.

PURCHASE.

It is hereby agreed that the Piedmont Phosphate Company and the Alachua Phosphate Company, sell to the Anglo-Continental, (late Ohlendorf's) Guano Works, London Agency, further ten thousand (10,000) tons, (10 per cent more or less buyer's option,) of Dried Florida Hard Rock for shipment during 1894, in about equal two monthly quantities on the same terms as stated in prior contract.

148    SUPREME COURT OF FLORIDA.

Alachua Phos. Co. v. Anglo-Continental G. W.—Opinion of Court.

## ACCIDENTS AND OUT-PUTS.

Should accidents occur preventing miners from turning out above quantity, buyers will agree to postpone execution of contract, as may be agreed on. Miners, however, to use all exertion to comply with the terms of this agreement, sellers agree not to sell any rock to any other buyer, this to cover output of both mines until the end of 1894.

> For the Anglo-Continental (late Ohlendorf's) Guano Works, C. Thalheim.
>
> Jas. M. Graham, for the Piedmont, Coal and Phosphate Company, as G. M. and Alachua Phosphate Company as Treas."

"Ocala, Fla., Jan. 7th, 1894.

O. T. Green, Esq.

Atty. for Piedmont and Alachua Phosphate Companies. Dear Sir:

I agree in order to settle the difficulty with the Piedmont and Alachua Companies, to accept Dr. Gascoyne as the chemist of the sellers otherwise the chemist to remain the same, Grothe being canceled. This refers to the contract for the production of the above mines for the year 1894. As regards the other points I agree to have the same arbitrated. Please ask Mr. Graham to confirm the chemist and I can attach the agreement to the contract.

> Yours truly, C. THALHEIM.

I agree to above alteration.

> C. THALHEIM,
>
> JAS. M. GRAHAM, for P. & A. Cos."

The cause was referred to a referee for trial and he entered judgment for defendant.

The plaintiff's contention is, that it is the assignee of the Piedmont Company; that it relies upon the contract

and the modification of January 7th, 1894; that it complied with such contract by refusing to sell to others and by tendering to the defendant the phosphate rock in the amounts, at the times, in the manner, and of the chemical analysis required, and that it was ready, able and willing to do so at all times required by the contract; that the defendant violated the contract by refusing to accept the rock; that defendant declared the contract canceled because suit was instituted by the Piedmont Company, *over which company plaintiff had no control;* that defendant refused to arbitrate under the requirements of the writing dated January 7th, 1894; and that because of the refusal of defendant to accept and pay for the rock tendered under the contract, plaintiff was forced to sell the same for less than the contract price, to the plaintiff's damage.

A part of the testimony introduced by the plaintiff was a number of letters written by James M. Graham for the plaintiff company and by C. Thalheim for the defendant company upon the subject of the contract and its breach. Thalheim's letter to Graham dated February 23, 1894, referred to a suit brought by the Piedmont Company against the defendant, and stated that such suit was a breach of the agreement and canceled the contract. Graham's reply thereto dated February 25, 1894, stated that "the suit of the Piedmont Company was not entered since I saw you, but in January, and will I think be prosecuted to a judgment, as I told you when in Ocala last week. I could not now stop this suit if I wished, and I would not if I could, as your company owes the Piedmont Company the amount claimed. I tried to compromise the matter and you agreed to do so, but afterwards backed out. This company is not the Piedmont Company, and cannot control its action." One of the witnesses for the plaintiff testified that James M. Graham was general manager for

the Piedmont Company and was first treasurer and afterwards president of the Alachua Company; that Mr. Graham was the acting managing official of both companies and made all the contracts for both the companies; that he decided all questions that arose in regard to the control and management of the companies' business in Florida; that the suit of the Piedmont Company against the defendant company which was claimed by the defendant to have been instituted in violation of the agreement of January 7th, 1894, to submit the subject matter of it to arbitration, was instituted by direction of Graham. There was also testimony that the provision in the writing of January 7th, 1894, for the arbitration of other points between the parties related to selling of phosphate rock to the defendant by the Piedmont Company in 1893. This testimony is not contradicted. The date of the institution of the suit is not given except that one of Thalheim's letters states it was begun after he saw Graham in February, and Graham's reply states that it was begun in January, the month in which the writing of January 7th, 1894, agreeing to submit certain matters to arbitration, was executed. Graham for the plaintiff testified that he relied on the contract as modified; that the claim here sued for was for rock shipped by the Alachua Company for itself and as assignee of the Piedmont Company; that Thalheim, the representative of the defendant, refused to arbitrate the matters referred to in the agreement of January 7th, 1894, but he did not give the date of such refusal. There was other testimony bearing on the subject of the breach of the agreement of January 7th, 1894, by the Piedmont Company in bringing the suit upon matters agreed by both of the selling companies to be arbitrated.

The defendant introduced no testimony and insisted that the agreement of January 7th, 1894, was binding upon the plaintiff; that such agreement was violated by the suit brought upon matters agreed to be submitted to arbitration; that because of such violation plaintiff was held to comply with the contract of August 9th, 1893, as to a chemist, and upon failure to so comply the defendant was justified in refusing to perform its part of the contract.

The referee found among other things, that the selling companies referred to in the contract of August 9th, 1893, did not abide by their said agreement of settlement, and the claim in dispute referred to in the writing of January 7th, 1894, was continued to be prosecuted by the Piedmont Company by a suit against the defendant, and the condition upon which defendant agreed to substitute Gascoyne for Grothe and which was accepted by plaintiff was not carried out by plaintiff.

Treating the agreement of January 7, 1894, as an entirety the breach of it by the Piedmont Company was binding on the Alachua Company since the Alachua Company agreed to the terms thereof without excepting any of them. See Parsons on Contracts (9th ed.) bottom pages 514 *et seq.*

If the plaintiff violated the contract the defendant cannot be held to its performance. See Etheredge v. Barkley, 25 Fla. 814, 6 South. Rep. 861; Adams v. Boston Iron Co., 10 Gray 495; Thompson v. Richards, 14 Mich. 172.

Since the contract of August 9th, 1893, and the writing of January 7th, 1894, were each signed by James M. Graham the representative of both the Alachua and Piedmont Companies, and considering the terms thereof as an entirety and that they were binding on both companies, and in view of the testimony that the suit of the Piedmont

Company was instituted by direction of James M. Graham, its general manager and the representative of both companies who made the contract for them, as well as other testimony for the plaintiff before the referee, it cannot be said here that the referee erred in his finding that the plaintiff had violated the terms of the writing of January 7th, 1894, and in entering judgment for the defendant.

In view of the conclusion reached it is not necessary to consider any other questions presented.

The judgment is affirmed.

SHACKLEFORD, C. J., and COCKRELL, J., concur.

TAYLOR, P. J., and HOCKER and PARKHILL, JJ., concur in the opinion.