J. A. CARR AND A. S. CARR, PARTNERS DOING BUSINESS
UNDER THE FIRM NAME. AND STYLE OF CARR BROTHERS,
*Plaintiffs in Error,* v. J. N. C. STOCKTON AS RECEIVER
OF SOUTHERN NAVAL STORES COMPANY, A CORPORATION;
*Defendant in Error.*

Opinion filed July 1, 1922.

1. An established custom or trade usage may annex incidents
   to a written contract, and a contract involving such a trans-
   action should be interpreted in the light of such custom or
   usage.

2. Recovery in a suit upon a contract requiring performance of certain acts by plaintiff cannot be sustained in the absence of proof of substantial performance by plaintiff or waiver thereof.

3. As a general rule, where a contract is violated by one of the parties thereto, the other party is thereby released from the contract.

4. A party to a contract who is himself in inexcusable default of performance of an essential covenant may not repudiate the contract because of the default of the other party. But where it does appear that performance of such covenant has been insisted upon, and nothing appearing to the contrary, it may be assumed that the right to demand performance thereof has been waived.

A Writ of Error to the Circuit Court for Duval County, Daniel A. Simmons, Judge.

Reversed.

*Myers & Myers* and *George C. Bedel,* for Plaintiffs in Error.

*Martin H. Long,* for Defendant in Error.

WEST, J.—This is an action of contract. Upon a trial of the issues there was a directed verdict for plaintiff. Judgment was entered on the verdict and defendants took writ of error.

The first and second assignments of error are abandoned.

The third assignment as amended presents for review the ruling of the court sustaining the demurrer to the first plea to the amended declaration.

The plaintiff sues as the Receiver of the Southern Naval Stores Company.

The contract sued upon contains a provision that in consideration of the release of Carr Brothers, the defendants, from an existing contract between Southern Naval Stores Company and defendants and from certain enumerated obligations of said contract to be performed by said defendants, the "said Carr Brothers agree to ship turpentine and rosin to said Company so that within eight (8) years from this date, they shall ship sufficient naval stores to produce a commission of $6,500.00 on the basis of 2½% commission on the amounts of the sales made by the said Company from naval stores so shipped. Said sum shall be paid in an average of $812.50 a year. At the end of any year should the commission on the products so shipped not equal the said sum of $812.50, the said Carr Bros. agree to pay the difference in cash, and should the commissions exceed the sum of $812.50 in any year, the excess shall be credited on the amount of the commissions to be paid in the succeeding year. The said Carr Brothers may relieve themselves of this obligation at any time by paying the amount of the commission herein agreed to be paid and remaining unpaid in cash." The declaration alleges partial compliance only by defendants with this requirement of the contract for the years ending September 15, 1913, 1914 and 1915, since which time defendants have wholly failed and refused to make any shipments of turpentine and rosin to said company or pay the yearly installments required by the terms of the contract to be paid by them.

The plea, demurrer to which was sustained, avers in substance that defendants were producers of naval stores and that the Southern Naval Stores Company was a naval stores factor in the city of Jacksonville; that according to the customs of the naval stores factorage business, when not otherwise expressly agreed, shipments of naval stores to

factors are to be sold by them on the market when received and account sales rendered to the shipper showing the price received, expenses of sale, including commissions, and net balance due the shipper, which balance is placed to his credit subject to his draft, and that the contract sued upon was made in reference to this custom; that prior to the commencement of the war in Europe in the year 1914 shipments of naval stores were made by defendants to the Southern Naval Stores Company as factor and that the business between them was conducted in accordance substantially with this custom; that because of the unsettled conditions of the naval stores market resulting from the war, defendants were requested by the factor to make no further shipments until otherwise advised, whereupon by mutual understanding shipments under the contract were discontinued until the beginning of the year 1915, when shipments under the contract were resumed and were made and received by the factor in sufficient quantity to produce a net balance due defendant of $1,430.50, for which amount defendants drew a sight draft upon the factor, payment of which was refused because of its inability to pay same that no part of said amount was afterwards paid to defendants by said factor; that failure to pay same was due to the financial straits of said factor, which subsequently, in the month of August, 1915, on application of certain of its stockholders, was placed in the hands of a receiver and its business has ever since been administered by such Receiver, the plaintiff; that because of the failure of said factor to pay over to defendants the proceeds of sales made for them as had been previously done with other shipments, defendants were compelled to ship their products to other factors who were able to handle same and account to them for the proceeds of sales after deducting expenses, including the usual commission of 2½ per cent on such sales; that

defendants have always been ready, willing and able to pay said Southern Naval Stores Company or the plaintiff any balance of the commission due under said contract prior to the suspension of shipments to it at the request of said factor, but that the plaintiff has demanded not only such balance but also the commissions for the remainder of the eight year period covered by said contract and has refused to settle otherwise; that because of the breach of the contract by said factor in refusing and failing to pay defendant's draft for the balance of net proceeds of shipment made to it as herein averred, defendants refused to proceed further with said contract.

It is well settled that an established custom or trade usage respecting a commercial transaction may annex incidents to a written contract and that a contract involving such a transaction should be interpreted in the light of such custom or usage. Williston on Contracts, Vol. 2, p. 1262; Hutton v. Warren, 1 Meeson & Welsby, 466; South Deerfield Onion Storage Co. v. New York, N. H. & H. R. Co., 222 Mass. 535, 111 N. E. Rep. 367; Barrie v. Quimby, 206 Mass. 259, 92 N. E. Rep. 451; Pittsburg C., C. & St. L. Ry. Co. v. Knox, 177 Ind. 344, 98 N. E. Rep. 295.

In Hutton v. Warren, *supra,* the court said: "It has long been settled, that in commercial transactions, extrinsic evidence of custom and usage is admissible to annex incidents to written contracts, in matters with respect to which they are silent. The same rule has also been applied to contracts in other transactions of life, in which known usages have been established and prevailed, and this has been done upon the principle of presumption that, in such transactions, the parties did not mean to express in writing the whole of the contract by which they in-

tended to be bound, but a contract with reference to those known usages.''

. The plea avers and the demurrer admits the factor's failure and inability, because of financial difficulties, to make payments for shipments of naval stores received by it from defendants in accordance with the trade usage alleged after the date mentioned in the plea.

The contract should not be construed, we think, as an unconditional undertaking by defendants in the alternative, that is to say, an agreement by them to pay the annual installments as stated of the total amount agreed to be paid either in shipments of naval stores to the factor for sale in sufficient quantities to yield the amount of the annual installments in commissions or in cash, but rather, as contended by defendants, as an agreement to pay such amount in shipments of naval stores in accordance with the terms of the contract or at the option of defendants in cash if they desired to do so.

Upon this construction the factor's default in making payments for shipments received from defendants as agreed was such a breach upon its part as to release defendants from further performance. By this breach defendants were prevented from making payment to the factor in the manner expressly provided for by the contract. Anvil Mining Co. v. Humble, 153 U. S. 540; Curtis v. Gibney, 59 Md. 131; Rappleye v. Racine Seeders Co., 79 Ia. 220, 44 N. W. Rep. 363, 7 L. R. A. 139; Kinch v. Moadinger, 57 N. Y. Supp. 248; Otstott v. Merryman, 71 Fla. 352, 71 South. Rep. 278; Alachua Phosphate Co. v. Angle-Continental Guano Works, 51 Fla. 143, 40 Sou. Rep. 71; Etheredge v. Barkley, 25 Fla. 814, 6 South. Rep. 861.

We do not overlook the principle that a party to a con-

tract who is himself in inexcusable default of performance of an essential covenant may not repudiate the contract because of the default of the other party thereto. But this principle is not applicable here because it does not appear that the factor attempted to take any advantage of defendant's failure to pay in full any annual installment as it fell due for any year preceding the factor's breach, in which circumstances it will be assumed that the right to demand such performance was waived by it.

What we have said results in the conclusion that the plea set up a good defense to the demand of the plaintiff except as to the amounts which defendants express a willingness to pay. There was error, therefore, in sustaining the demurrer to the plea, for which the judgment must be reversed.

Reversed.

BROWNE, C. J., and WHITFIELD and ELLIS, J. J., concur.