119 So.2d 43 (1960)
ORANGE CITY HILLS, INC., Appellant,
v.
FLORIDA REALTY BUREAU, INC., Appellee.
No. B-156.
District Court of Appeal of Florida. First District.
March 3, 1960.
Rehearing Denied March 28, 1960.
*44 Raymond, Wilson, Karl & Fink, Daytona Beach, for appellant.
Sidney H. Taylor, DeLand, for appellee.
STURGIS, Judge.
Orange City Hills, Inc., seeks reversal of a judgment for $27,000 in favor of Florida Realty Bureau, Inc., entered upon the verdict of the jury in an action to recover a real estate brokerage commission alleged to have been earned pursuant to an agreement whereby defendant listed with plaintiff approximately 900 acres of land for sale.
The plaintiff, Florida Realty Bureau, Inc., is a closed family corporation chiefly engaged in the real estate brokerage business. It was organized by David Cohn, Samuel H. Cohn, and Ethel Cohn, who held the offices of president, vice president, and secretary-treasurer, respectively.
The defendant, Orange City Hills, Inc., also a closed corporation, was principally engaged in the purchase and sale of real property in this state. It was organized by John F. Kolar, H. Wade Seaford, and George H. Perkins. In a general way, its president, Kolar, supervised the business activities of this corporation; its vice president, Seaford, had charge of its land planning and construction work; and its secretary-treasurer, Perkins, had charge of sales and promotions outside Florida.
The formal brokerage contract in suit gave to the plaintiff-appellee the exclusive *45 right of sale, under specified terms and conditions, and during a period expiring at midnight on April 21, 1956, of certain real property owned or controlled by defendant-appellant. The brokerage commission payable to plaintiff for the procurement, within the time limited, of a buyer ready, willing and able to purchase the subject property, was 10% of the stated purchase price of $300 per acre, payable $180,000 in cash on conveyance of title, and the balance by a purchase money mortgage payable in equal annual installments and bearing interest at 5% per annum on unpaid balances. The contract further provided that the commission on that part of the purchase price represented by the earnest money was payable upon execution of the contemplated sales agreement and the balance upon conveyance of title. Plaintiff laid out substantial sums of money in an effort to procure a buyer upon the terms and conditions specified therein
Two days before the expiration of the brokerage contract, at the instance of the plaintiff-broker and without participation of the defendant-landowner, there was prepared in the office of an attorney representing plaintiff-broker a draft of a contract designating "East Coast Development Corporation, a New York corporation" as the buyer, and the defendant, Orange City Hills, Inc., as seller of the subject property. The purchase price was $300 per acre, $2,000 of which was payable upon execution and delivery of the contract, $23,000 payable 30 days after delivery thereof, $155,000 on delivery of the deed, which payments aggregate $180,000, and the balance by a purchase money note secured by a mortgage payable in equal annual installments over an eight-year period, the deferred payments bearing 5% interest. Paragraph 6 of the draft of the proposed contract provided:
"It is acknowledged that Florida Realty Bureau, Inc., a Florida corporation, is the broker in this transaction and that this contract was procured by such broker under the terms of its agreement with the seller dated February 10, 1956, and this contract is intended to be in compliance with and in fulfillment of said contract."
Paragraph 7 of the draft further provided:
"In the event that the buyer fails or refuses to pay the sums hereinabove mentioned within the times herein provided, this contract shall terminate and the seller shall be entitled to retain all sums heretofore paid hereunder as liquidated damages."
On April 19, 1956, which was two days prior to the expiration of the listing, the plaintiff presented to the president of the defendant corporation the draft of the proposed contract together with a check for $1,800, representing the $2,000 initial payment mentioned in the draft of the proposed contract, less 10% thereof, and requested the president of the defendant corporation to execute the contract in its behalf. He refused to do so.
A meeting between representatives of the plaintiff and defendant corporations was held on April 30, 1956, at which time the defendant informed the plaintiff that defendant did not recognize the listing agreement as valid and refused to accept the contract as tendered. The record is devoid of any transaction extending the brokerage contract beyond April 21, 1956, or operating to vest in any representative of the defendant authority to vary the terms of the brokerage contract.
The amended complaint contains three counts. The first count, based strictly on the brokerage contract, alleges that within the period limited the plaintiff-broker tendered to the defendant-seller a purchase and sales agreement duly executed by East Coast Development Corporation a purchaser ready, willing and able to purchase the property upon the terms and conditions of the brokerage agreement. That agreement and the proposed sales agreement are made part of that count.
*46 The second count, without referring to the brokerage contract, alleged that on February 10, 1956 [this being the date of the brokerage contract] plaintiff was engaged by defendant to find a buyer for its property, that plaintiff found a buyer ready, willing and able to purchase upon the terms and conditions agreed upon by the defendant and presented defendant with a contract executed by the buyer and a cashier's check for the binder payment on the contract, but that the seller refused to accept the contract and refused to pay the commission to the plaintiff-broker as agreed upon. The plaintiff's proofs on this count depended upon the brokerage contract referred to in the first count to establish the terms of the listing.
The third count "for work done and materials furnished by the plaintiff for the defendant at its request" was withdrawn by the plaintiff prior to trial.
In answer to the complaint, the seller filed defenses to the effect: (1) that it did not agree as alleged; (2) that it did not execute or enter into the alleged brokerage agreement; (3) that it was a condition of the brokerage agreement that it was not to be binding on the defendant unless and until executed by its president, and that such was not done; (4) that defendant's vice president, who undertook to act for the corporation in executing the brokerage contract, was without authority to do so; and (5) generally denied that plaintiff had performed the alleged services.
A pretrial order reflects that by agreement of the parties the following issues were involved, that testimony could be presented thereon, and that the pleadings should be deemed amended to include the same:
(a) Whether the sale or transaction involved contemplated a sale of the entirety of the corporate assets, necessitating the joint action of the directors and stockholders.
(b) Whether the plaintiff complied with the terms of the brokerage agreement relied on by it, by presenting a buyer ready, willing and able to purchase on the terms and conditions given by the defendant.
(c) Whether the plaintiff tendered a buyer ready, able and willing to buy within the time limitation set forth in the agreement relied on by it.
Upon the issues thus made the case was tried.
At the conclusion of plaintiff's evidence in chief and also after the close of all the evidence, defendant moved for a directed verdict on grounds including the following:
"That it affirmatively appeared from the testimony that the plaintiff had no valid or subsisting listing on the crucial date of April 19, 1956."
"That the plaintiff had wholly failed to prove by a preponderance of the evidence that it either had a valid or subsisting listing or produced a buyer ready, able and willing to buy in accordance with the terms of the purported listing upon which it relied."
"That it affirmatively appeared from the evidence that the purported offer, whether it be from the East Coast Development Corporation or others, was not in accordance with the terms of the purported listing and was made after the purported listing had expired by its terms."
The motion was denied. Thereafter, over objections of the defendant, certain instructions requested by plaintiff were given to the jury and certain instructions requested by defendant were denied. The jury rendered a verdict in the full amount of the commission that the plaintiff-broker was capable of earning, assuming it fully complied with the brokerage agreement. Motions for judgment notwithstanding the verdict and for a new trial were denied and judgment entered on the verdict in favor of plaintiff.
*47 The controlling point for determination is whether the evidence establishes compliance by plaintiff with the brokerage agreement so as to entitle it to recover the agreed commission. Collateral thereto is the question of whether the trial court correctly instructed the jury with respect to an implied listing and the amount recoverable by the plaintiff.
The second count of the complaint is based upon an implied listing of the subject property with the broker for sale, but does not state the terms of the sale. The evidence clearly reflects, however, that the written document, upon which the first count was based, states the terms and conditions of the listing. Assuming, therefore, that the jury was entitled from the evidence to conclude that there was an implied contract listing of the property for sale, there is nevertheless no basis in the evidence upon which to conclude that the terms and conditions of the implied contract varied one iota from those clearly stated in the written document referred to in the first count. Hence our conclusion on the main point for determination, as above stated, is not affected by the question of whether plaintiff's claim is founded on an express or implied contract, the conditions of each being the same.
Upon careful review of the record we are compelled to conclude that the plaintiff-broker did not procure a purchaser ready, willing and able to buy the subject property upon the terms and conditions specified by the listing agreement. We recognize that the listing agreement did not state the amount of binder to be exacted from the buyer on signing of a purchase contract, or the terms of the contemplated purchase money mortgage, or the exact period of time to be allowed for closing. It did state most of the terms and conditions of the contemplated sale, including the purchase price and amount to be paid at time of closing; and the above missing elements are suppliable in accordance with the usual reasonable and customary practices in the locality. Carr v. Stockton, 1922, 84 Fla. 69, 92 So. 814; 5 Fla. Law and Practice, Contracts, Sec. 73; 25 C.J.S. Customs and Usages § 19, subd. l, p. 107; 3 Williston on Contracts (Rev.Ed.), Sec. 652. But see McAllister Hotel Inc. v. Porte, Fla., 98 So.2d 781, which indicates that terms not specified in the listing should be only those acceptable to the seller.
The basic insufficiency of the proposed contract tendered to the seller in this case rests in the fact that it is nothing more than an option to purchase. The above quoted paragraph 7 thereof provides for automatic termination of the contract and retention by the seller of the $2,000 binder as liquidated damages upon failure of buyer to pay the additional sums called for by the contract. It is elemental that the presentation of an option to purchase instead of a firm contract of bargain and sale is not compliance with the requirement that the broker procure a purchaser ready, willing and able to purchase in accordance with the terms of the listing here involved. Whether the instrument is an option is determined by its content, its basic features, not what it is called. 8 Am.Jur., Brokers, Sections 176, 177; 12 C.J.S. Brokers § 86c, p. 198.
We have carefully considered that line of authority relied on by appellee to the effect that when the owner repudiates the brokerage agreement or listing by refusing to recognize it as binding upon him, the broker is entitled to any commission which he may have earned on the basis of a subsisting valid agreement. We are also cognizant of a similar rule in respect to circumstances where the broker presents a contract of purchase which contains some provisions that are likely capable of modification to meet proper objections of the owner, but which is rejected by the owner without affording an opportunity for such a modification to be negotiated. We do not think the facts in this case are comparable with either of those situations. We hold, in fine, that where the contract is permeated with provisions, as is the contract here, rendering it in essence an option to purchase rather than a contract to purchase, *48 the broker has wholly failed to make out a prima facie showing of performance under the listing contract.
Having determined that the evidence fails to show that the plaintiff-appellee procured a purchaser ready, willing and able to purchase in accordance with the terms of the listing (brokerage) contract, it follows that the motion for a directed verdict should have been granted. In view of this conclusion it is unnecessary to discuss the other points relied on for reversal.
Accordingly, the judgment is reversed with directions to enter judgment for the defendant on the motion for judgment notwithstanding the verdict, and for such other proceedings as may be consistent herewith.
CARROLL, DONALD, J., concurs.
WIGGINTON, Chief Judge, dissents.
WIGGINTON, Chief Judge (dissenting).
The majority opinion is predicated solely upon the proposition that the proposed contract of purchase and sale tendered by appellee-broker was not in substantial compliance with the listing in that it was in law nothing more than an option extending the time for purchase for thirty additional days. Under the circumstances in this case I cannot agree that such defense was available to the appellant-owner.
The evidence shows that when the contract was tendered to the corporate owner for acceptance and execution, the owner rejected it on the sole ground that the broker had no valid listing agreement from the owner, and was not authorized to act for it or bind it in any manner. None of the grounds now assigned as objections to the contract were stated or expressed by the owner at the time the contract was rejected. The evidence further shows that despite the alleged lack of authority in the broker, the owner expressed a willingness to waive his stated objections and to execute the contract in the form presented if the purchaser would agree to also purchase an additional 100 acres of land owned by the son of the corporate owner president. When the purchaser refused to buy the additional land at the price then offered, the owner refused to sign the contract and the deal collapsed.
Appellee contends that under these circumstances the owner is now estopped to raise on trial new and additional objections to the contract, for if such new objections had been raised originally at the closing conference, the broker would then have had an opportunity to have saved the transaction from failure and thereby earned his commission by attempting to have the contract so modified as to meet the approval of all parties. The owner, having rejected the contract on the sole ground that the broker was not authorized to act for it in any manner, the broker was thereby precluded from attempting to gain the purchaser's consent to amend the contract so as to eliminate or reconcile the objections on which the owner now relies.
The well established rule of law in this respect is founded on principles of fair play and common sense.
"As a general rule, where a land owner who has listed property for sale with a real estate broker refuses to accept an offer which is substantially in accordance with the listing, he cannot afterwards defend the broker's action for compensation on a ground not specified when rejecting the offer."[1]
In Stanton v. Barnes, 72 Kan. 541, 84 P. 116, the owner denied the listing, the court held:
"The fact appears beyond question, however, that while the defense was a general denial, all liability was denied upon the ground that plaintiff in error *49 had never listed the property for sale with defendants in error, had not employed them to sell the property at all, was not the owner, and had no authority from the owner to sell it. This is the substance of his own testimony. After putting his refusal to complete the sale upon these grounds alone he waived any defense based upon the inability of the proposed purchaser to pay the price in cash, and, as was said in Ohio & M. Railway Co. v. McCarthy, 96 U.S. 258, 267, 24 L.Ed. 693, he cannot be `permitted thus to mend his hold. He is estopped from doing it by a settled principle of law.' * * * If this had been a reason for refusing to complete the sale he should have so stated at the time so that the other party might know what was lacking and possibly correct it."
In Morgan v. Whatley, 205 Ala. 170, 87 So. 846, 848, the owner refused to sell on the ground that his wife would not sign the deed. He later defended on the fact that the purchaser had not become bound in writing to buy. In granting recovery to the broker, the court said:
"Moreover, in the instant case, the undisputed evidence is that Morgan's only assigned reason for not carrying out the trade was his inability to procure his wife's execution of the deed  a waiver of other objections, if any he had."
In Duclos v. Cunningham, 102 N.Y. 678, 6 N.E. 790, the owner disavowed the listing and then defended on the ground the broker had not disclosed the names of the purchasers. The court held:
"No such objection was taken at the time by the defendants, and, had it been, the difficulty, no doubt, would have been obviated at once by the plaintiff disclosing the name of the purchaser. Even if ordinarily a broker is required to furnish the name of the purchaser as a condition precedent to his right to claim commissions on the sale, as the defendants interposed no objection on that ground, and absolutely disavowed the sale, they waived the right to insist upon any such condition."
Based upon the foregoing authority I am inclined to agree that since the owner's only expressed objection to the contract, and to consummating the transaction, was the lack of the broker's authority to negotiate the sale, which position the evidence shows to have been unfounded, the broker's right to his commission should not be denied on new grounds of objection to the contract raised by the owner in this suit. If such objections had been expressed at the closing conference, it is possible that the broker could have secured the purchaser's consent to eliminate from the contract any objectionable provisions, and to amend it in such way as would have satisfied the owner and the purchasers and thereby assured completion of the transaction. The jury was justified in believing from the evidence the facts giving rise to the above stated principles of law and to have found in favor of the broker.
NOTES
[1] 8 Am.Jur. 181.1 Pocket Parts.