237 So.2d 236 (1970)
BRYAN AND SONS CORP., a Florida Corporation, and Hubert E. Bryan, Appellants,
v.
Sivert KLEFSTAD, Albert R. Kreck and Grace Kreck, His Wife, Appellees.
Sivert KLEFSTAD, Albert R. Kreck and Grace Kreck, His Wife, Appellants,
v.
BRYAN AND SONS CORP., a Florida Corporation, and Hubert E. Bryan, Appellees.
Nos. 2384, 2620, 69-128.
District Court of Appeal of Florida, Fourth District.
May 27, 1970.
Rehearing Denied August 5, 1970.
*237 John A. Gentry, III, of Moyle, Gentry & Jones, West Palm Beach, for appellants as to Case No. 2384 and for appellees as to Case Nos. 2620 and 69-128.
Guy W. Held, of Winters, Brackett & Lord, West Palm Beach, for appellees as to Case No. 2384 and for appellants as to Case Nos. 2620 and 69-128.
OWEN, Judge.
Mr. Klefstad and his associates brought suit against Mr. Bryan and his corporation to foreclose a chattel mortgage. The corporate defendant counterclaimed to foreclose a mechanic's lien for work it had performed on plaintiffs' lands under a land clearing contract. The plaintiffs then amended their complaint to allege additionally that the defendant had breached the land clearing contract resulting in damages to the plaintiffs as owners. The non-jury trial resulted in a final judgment which apparently satisfied neither party, as defendants appealed and assigned error to certain findings, and plaintiffs filed cross assignments of error to other findings.
The issues were somewhat complex and the evidence in substantial dispute on most of these issues. The court's burden was materially increased by the fact that the written agreement between the parties for the clearing, ditching and "bedding" of the land in preparation for citrus planting was, as stated by the trial court, "replete with ambiguity and contradiction". The final judgment itemized the sums found by the court to be due to each of the parties from the other and after offsetting these, awarded the corporate defendant a net recovery of $2,291.01 on the counterclaim. Although the court found that the corporate defendant had breached the land clearing contract (by virtue of which the court had allowed the plaintiff owner damages of $5,000 as an offset), the final judgment awarded the corporate defendant its attorneys' fees and costs under the mechanics' lien statute. On this appeal the corporate defendant complains of the finding that it breached the land clearing contract, the award to plaintiff owners of $5,000 in offset damages consequent upon such breach, and the failure to award the corporate defendant damages for certain "extra work" performed in digging two main canals on plaintiffs' lands. The plaintiffs complain that the allowance to them of $5,000 for the corporate defendant's breach of contract was substantially less than the damages sustained by the owners as a result of such breach.
The foregoing appeal was No. 2384, and while it was pending the court entered its order fixing the amount of attorneys' fees and costs to be allowed the corporate defendant pursuant to the final judgment. Mr. Klefstad and his associate thereupon brought an interlocutory appeal from that order, which is No. 2620. Still later the court entered an order correcting the final judgment nunc pro tunc to show that the corporate defendant had a lien for the amount awarded by the final judgment, which lien was against the fund the plaintiff owners had earlier deposited into the registry of the court in order to release *238 the land from the lien which the corporate defendant had filed against it. Plaintiffs' interlocutory appeal from that order is No. 69-128. Both interlocutory appeals have been consolidated with the full appeal for disposition.
Under the agreement the owners hired the contractor to prepare approximately 677 acres of land in Palm Beach County, Florida for the planting of citrus trees. The work contemplated included clearing the land by removing brush, trees, trash, rocks, stumps, and other impediments to cultivation, and thereafter leveling, grading, ditching, diking, draining, filling and "bedding" in accordance with plans and specifications prepared by the owners' engineers. Appropriate provision was made for periodic progress payments on the basis of work completed upon invoice being submitted to and approved by the engineers. The agreement provided for a lump sum contract price for the project "generally based on" certain unit prices specifically set forth therein. The agreement also provided that certain itemized work was not included within the specifications under the contract but would be considered as "extra work". Included in this latter category was provision for clearing "heads" with a dragline at $14 per hour, filling "heads" with a pan at $15 per hour, and dozer work in "heads" at $12 per hour. The parties understood "heads" to be bay heads or slough areas, and provided by interlineation in the agreement that if the clearing of "heads" was performed by a dragline at $14 per hour as "extra work", the owners would receive a credit of $75 per acre, which was the unit price of clearing an acre set out in the schedule of unit prices upon which the "contract price" had been based. The original agreement was modified several months later by the parties signing a written amendment which expressly specified that the contract price was a firm price for the work called for under the contract specifications.
Among the ambiguities which the court found in the written agreement was the question of whether the contract between the parties called for a firm contract price for all of the work on the project (other than extra work), or whether the land clearing, canal excavations, bedding, culvert installations, and related work was to be performed and paid for on the unit prices mentioned in the agreement. The court resolved this by finding that the contract did provide for a firm contract price, and in the final judgment the corporate defendant received credit for such amount. We agree with the court's findings in this regard. We conceive the effect of it to be that irrespective of the amount of work the corporate defendant performed on the job site, it was covered under the firm contract price unless the work could clearly be shown to be "extra work".
The court found that the corporate defendant had breached the contract by gradually withdrawing its equipment and personnel and finally abandoning the project. Our review of the record convinces us that this finding is contrary to the evidence in two respects, which we will discuss briefly.
In the first place, but of minor significance to our conclusion, we think the evidence establishes that the owners' conduct would have justified the contractor's electing to terminate the work. The agreement expressly permitted the contractor to terminate further work under the contract in the event the owner should fail to abide by any of its covenants and agreement contained therein. The evidence established without dispute that prior to the time the corporate defendant withdrew its equipment and personnel from the job site, the owners had failed to pay for two items of "extra work", the invoices for which had been properly submitted to and approved by plaintiff engineers in accordance with the procedure prescribed by the agreement. This breach by the owners would alone have justified the corporate defendant's termination of the *239 work. Carr v. Stockton, 1922, 84 Fla. 69, 92 So. 814; 7 Fla.Jur., Contracts, § 164.
In the second place, and of major significance, the evidence establishes without material dispute that at the time the corporate defendant finally withdrew all equipment and personnel from the plaintiffs' lands, the work contemplated to be performed for the firm contract price of $97,229.50 had been substantially performed. At that time the only contract work which remained to be done (excluding the controversial 92-acre parcel which is discussed below) was of a relatively minor nature, such as picking up roots or "polishing" on 220 acres and possibly the setting in place of a few culverts and similar minor matters. Under the "substantial performance rule" the contractor was entitled to enforce its rights under the contract, with the owners entitled to recoupment for any damages sustained by them as a result of the contractor's failure to complete its performance. See Poranski v. Millings, Fla. 1955, 82 So.2d 675; Livingston v. Anderson, 1892, 30 Fla. 117, 11 So. 270. The trial court followed this principle in giving the contractor credit for the full contract price and allowing the owners $5,000 in damages as a setoff.
The major bone of contention between the parties was a 92-acre parcel located in the northwest corner of plaintiffs' lands upon which the "bedding" had not been performed at the time the corporate defendant withdrew its equipment and personnel and announced to the owners that the work had been completed. The owners subsequently paid $16,450.00 to another contractor to finish preparing the land for citrus planting, the major portion of this cost being attributable to bedding the 92-acre parcel. The owners maintained that the bedding in the 92-acre parcel was a part of the contract work which was to be completed for the firm contract price and hence this cost should have been included in their damages. The contractor maintained the position that the bedding in the 92-acre parcel, as well as the other work which was subsequently performed by another contractor, was all "extra work" which was not covered by the firm contract price.
All of the witnesses who testified on the subject described the 92-acre parcel as being a slough or as a wet, deep muck area in which special equipment with wide tracks was required, and in which special matting was required for the draglines and other heavy equipment. The contractor who subsequently completed the work used special equipment to do so. Plaintiffs' own engineers testified that the physical condition within the 92-acre parcel was such that special equipment was necessary and that they considered the "bedding" in that area as "extra work". The engineers also testified that the soil conditions within the area were such that they found it necessary to redesign the bedding from a "single bedding" (which had an estimated unit price of $15 per acre in defendant's contract with the owners) to "double bedding" (which had an estimated unit price of $150 per acre in the contract under which the contract was ultimately completed). We think it manifestly clear that the bedding work which remained to be done within the 92-acre parcel was "extra work" rather than work contemplated within the firm contract price. Since Mr. Klefstad would not authorize it to be performed as "extra work", the contractor's act of withdrawing his equipment and personnel without bedding the 92-acre parcel was not a breach of the contract.
It appears that the court's allowance of $5,000 damages to plaintiffs took into consideration some part of the cost of bedding on the 92-acre parcel. Although the amount allowed was understandably substantially less than the expenses actually incurred by the owners since the bedding as redesigned was more costly, it is our view that in determining the owners' damages for completion of the contract, no part of the cost of bedding on the 92-acre parcel should *240 have been included. Upon remand the owners' damages to be allowed as a setoff will have to be redetermined consistent with the views set forth herein.
Defendants contend that the corporate defendant did not receive credit for the extra work it did in connection with excavation of the two main canals, each of which traversed the one mile width of plaintiffs' lands. The engineering plans upon which the defendant entered into the land clearing agreement contained a detailed cross section of the canals, showing them in the shape of a trapezoid, 16' wide at top, 4' wide at bottom, 6' deep, with sides sloped at 45°. After the work was in progress the plaintiffs' engineers determined that for such canals to be adequate they would have to be substantially enlarged so that on cross section they would be 24' wide at the top, 8' wide at bottom, 8' deep, with sides sloped at 45°. Whether or not the engineers had actual authority to authorize the additional work, clearly they had apparent authority to do so. Therefore, plaintiffs are bound by the engineers' actions. Stiles v. Gordon Land Co., Fla. 1950, 44 So.2d 417; Russell v. Eckert, Fla.App. 1967, 195 So.2d 617; O'Neal v. Crumpton Builders, Inc., Fla.App. 1962, 143 So.2d 344. The effect of this change made in the field by the plaintiffs' engineers was to increase the quantity of excavation on these two-mile long canals from approximately 23,000 cubic yards as reflected by the original plans to approximately 50,000 cubic yards actually excavated pursuant to changes made in the field. Although the final judgment set forth a finding by the court to the effect that the contractor was required to excavate more material than was anticipated in order to comply with the directions given by plaintiffs' engineers, the court failed to make any allowance to the contractor for such additional excavation which would clearly be "extra work".
In summary, we find that the corporate defendant had substantially performed the land clearing contract and was entitled to enforce its rights thereunder including the establishment and foreclosure of its lien; that the damages to which the plaintiffs are entitled as an offset for their cost of completing the contract should not include any part of the cost of bedding on the 92-acre parcel; and that the corporate defendant's damages should include compensation for the extra work performed by it in excavating for the two main canals. In all other respects we approve the findings and conclusions of the trial court. Our disposition of the main appeal disposes of the issues raised on the interlocutory appeals.
No. 2384 is reversed and remanded for entry of final judgment consistent herewith. The court in its discretion is authorized to receive such further evidence as it may feel necessary in order to determine the issues which we have asked to be reconsidered. Nos. 2620 and 69-128 are severally affirmed.
Affirmed, in part; reversed, in part and remanded.
CROSS, C.J., and WALDEN, J., concur.