**In re GULF COAST ORTHOPEDIC CENTER, INC., Debtor.**

**No. 96–14739–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 19, 2003.

Paul J. Battista, Miami, FL, for Debtor.

Susan K. Woodard, trustee.

John K. Olson, Asst. U.S. Trustee, Tampa, FL, for U.S. Trustee.

## ORDER ON MOTION TO REQUIRE "THE BONATI GROUP" TO REIMBURSE THE MALPRACTICE CLAIMS TRUST, OR IN THE ALTERNATIVE, TO HOLD TRUSTEE LIABLE FOR IMPROPER DISBURSEMENTS

(Doc. No. 1678)

ALEXANDER L. PASKAY, Chief Judge.

This is a confirmed Chapter 11 case and the matter under consideration is "Motion to Require 'The Bonati Group' to Reimburse the Malpractice Claims Trust, or in the Alternative to Hold Trustee Liable for Improper Disbursements," filed by the "Malpractice Claimants." This Court initially entered an Order on January 8, 2003, granting the Motion in part and setting the balance of the issues for final evidentiary hearing.

On April 22, 2003, this Court conducted a final evidentiary hearing. At the hearing, none of the parties, the Malpractice Claimants, the Bonati Group, or the Trustee, actually put on live testimony and instead submitted documentary evidence, none of which is disputed. The issue which remains for consideration is the request of the Malpractice Claimants for reimbursement of two discreet expenses paid out of the Trust by the Trustee as set up by the confirmed Plan for the payment of the allowed claims of the Malpractice Claimants. The first was the post-confirmation closing costs associated with the Bonati Group's guarantee of future payments pursuant to the confirmed Plan. The second was post-confirmation fees paid to Stearns Weaver, counsel for the Trustee, associated with the closing and other "asset disposition" related fees.

This Court having considered the documents offered and introduced into evidence, and having heard argument of counsel, now makes the following findings and conclusions.

Pursuant to the Confirmed Plan, the Bonati Group bought the majority of assets of the Debtor, Gulf Coast Orthopedic Center, Inc. (Debtor) for the sum of $5.5 million, with $2 million in cash was to be paid on the Effective Date, which amount was in fact paid, and with the balance in future payments of $200,000 per month. In connection with this transaction, the Bonati Group agreed, pursuant to the Settlement Agreement, which was specifically incorporated into the Confirmed Plan, to either post a Letter of Credit or grant a mortgage on certain real property and to grant a security interest in certain personal properties in favor of the Trustee to guarantee the future payments. *See* ¶ 9 of the Settlement Agreement.

On or about December 21, 2001, or shortly after the entry of the Confirmation Order, dated November 26, 2001, the Trustee, the Debtor and the Bonati Group consummated the transfer of the assets of the Debtor pursuant to the confirmed Plan. In connection with this transaction, the Bonati Group executed both a Promissory Note (Movant Ex. 1) and a Borrowing Resolution (Movant Ex. 2) for the balance of the future payments or for the sum of $3,664,000. A Closing Statement between the Trustee and the Debtor and Bonati Group, show that the closing costs associated with two mortgages and several UCCs were in the amount of $24,736.50. It is without dispute that the Trustee paid for these expenses and not the Bonati Group. It was conceded by the Malpractice Claimants that Stearns Weaver reimbursed the Trust the sum of $16,000, purportedly representing the double title insurance premiums received by Stearns Weaver in connection with the closing. Accordingly, the Malpractice Claimants are only seeking $8,736.50, as reimbursement for the closing cost expense.

Pursuant to several fee applications filed with this Court, Stearns Weaver has received in excess of $87,000 for the entry described as "asset disposition." This sum includes both pre- and post-confirmation fees. In the Motion, the Malpractice Claimants complain that the post-confirmation fees of $30,650 are excessive in light of the totality of the circumstances. It is without dispute that the Malpractice Claimants objected to some post-confirmation fees of Stearns Weaver and that this Court previously entered an Order on January 3, 2003, determining that reasonable fees incurred for that time period sought were in the total amount of $21,000, which was approximately $10,000 less than the amount requested.

It is the contention of the Malpractice Claimants that pursuant to the Settlement Agreement, all costs associated with the closing should have been paid for by the Bonati Group as opposed to the Trustee. This is so because it is the custom and ordinary practice for borrowers to pay for the costs associated with securing collateral. The Malpractice Claimants argue that the Settlement Agreement, ¶ 9, provides for either a letter of credit or the securing of collateral by the Bonati Group and since it is not disputed that the Bonati Group would have paid for the costs associated with securing a letter of credit, the Malpractice Claimants assert that the Bonati Group should have paid for the closing costs, as it was the alternative relief. With respect to the Trustee's counsel's fees, the Malpractice Claimants argue that the fees were excessive and nonetheless, should have been paid for by the Bonati

Group because the fees were associated with the closing.

In opposition, the Bonati Group argues that the Plan, as confirmed, provides for the use of the "Reorganization Funds" in implementing the Plan; that the closing was in conjunction with the implementation of the Plan; and therefore, the Bonati Group should not be required to pay for the costs associated with "implementing" the Plan. The Bonati Group relies upon Article 8, section b. of the Plan. The Bonati Group asserts that if this Court finds that it should have paid for the expenses associated with the closing, that amount is only $8,736.50, as the fees incurred by counsel for the Trustee should not be paid for by the Bonati Group.

Also in opposition, the Trustee argues that the expenses associated with the closing were for the implementation of the terms of the Plan and the Settlement Agreement; that Article 8, section c. of the Plan, entitled "Trustee's Duties," provides for the Trustee to make payments from the Reorganization Funds; and that the Trustee should not be held personally liable for making these disbursements if this Court finds that the same were improper because she was relying upon Article 8, section c. Counsel for the Trustee argues that the fees incurred under the description of "asset disposition," included more than just the time spend for the actual closing, and instead was a broad category that included other asset disposition activities. Finally, counsel for the Trustee asserts that should this Court find that the fees are excessive, it should receive a credit for the $16,000 reimbursed by Stearns Weaver to the Trustee.

Article 8, section b. of the confirmed Plan provides as follows:

*Implementation and Source of Reorganization Funds.* The Reorganization Funds shall be used to implement the terms and provisions of the Plan and of the Settlement Agreement. The Future Payments and the Insurance Recoveries shall be guaranteed by the Guaranties and the Future Payments shall be secured by the Collateral (subject to the Collateral Release and Collateral Subordination) as provided in the Settlement Agreement and in this Plan.

The dispute centers around whether or not the expenses associated with the closing for the additional collateral was an action that can be interpreted to be part of the implementation of "the terms and provisions of the Plan and of the Settlement Agreement."

It is without dispute that the Settlement Agreement is incorporated by reference into the confirmed Plan. *See* Article 1, section vvv. The Settlement Agreement, ¶ 9 provides as follows:

*Bonati guaranties and collateral.* The Bonati Group, other than Cecilia O'Ryan, will guaranty the Future Payments. The Future Payments, which run in favor of the Trustee, will be secured, effective as of the Effective Date (a) if available, by an irrevocable letter of credit issued by a financial institution reasonably acceptable to the Trustee, in an amount equal to 100% of the outstanding balance of the Future Payments as such balance exists from time-to-time (the "Letter of Credit"), or (b) in the event that such Letter of Credit is not available, by liens and mortgages on tangible assets owned by one or more members of the Bonati Group with a value reasonably acceptable to the Trustee and the Claimants.

The Malpractice Claimants argue that if the governing documents are silent as to who pays for the closing costs, the custom and ordinary practice in the State of Florida governs, which in this case, is that the borrower ordinarily pays for the costs as-

sociated with the closing. The Malpractice Claimants rely on the Florida Supreme Court case of *Carr v. Stockton,* 84 Fla. 69, 92 So. 814 (1922). In that case, the Supreme Court held that custom or trade usage may imply to be a part of the written contract, and the contract involving such transaction should be interpreted in light of the custom or usage. *See Cohodas v. Russell,* 289 So.2d 55 (Fla. 2nd DCA 1974); *NCP Lake Power, Inc. v. Florida Power Corp.,* 781 So.2d 531 (Fla. 5th DCA 2001).

Both the Trustee and Bonati Group argue that the Plan language is unambiguous and states that the costs associated with the implementation of the Plan are to be paid out by the Trustee; that this was not an orthodox closing inasmuch as the Bonati Group did not "borrow" any money from anyone; and that payment of expenses are negotiated and not necessarily paid by the borrower. Both parties rely solely on the language of the Plan and do not cite authority for their positions.

■■■ If there is any conflict in the provisions of an order on a confirmed plan, it is for the court to resolve that conflict. *In re Moir Hotel Co.,* 186 F.2d 377 (7th Cir.1950). In many respects, a plan is in the nature of a contract and as such, principles of contract construction are applicable. *In re Doty,* 129 B.R. 571 (Bankr. N.D.Ind.1991). It is a cardinal rule of construction that legal instruments will be construed strictly against its author. *Id.* at 591–592. Moreover, state law controls as to the construction of an ordinary contract. *Transcontinental & Western Air, Inc. v. Koppal,* 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953). Under Florida law, if a contract is silent as to certain terms, custom and usage of that trade is specifically incorporated therein. *Carr v. Stockton, supra.*

■■■ This Court is satisfied that the Bonati Group should have paid for the expenses associated with the execution of the mortgages and the UCCs, that is the sum of $8,736.50. Although the Plan, specifically, Article 8, section b. provides that the Reorganization Funds shall be used to implement the terms of the Plan and the Settlement Agreement, such language is subject to interpretation. Moreover, the Settlement Agreement, ¶ 9, which discusses the securing of collateral is specifically incorporated into the Plan and must be considered in tandem with the Plan.

It is without dispute that the Bonati Group would have paid for the expenses associated with securing the Letter of Credit, but since they were unable to secure the same, the alternative collateral was secured that is, the mortgages and the UCCs. Although this was not an "orthodox" closing, it is also without dispute that the Bonati Group executed both a Promissory Note and a Board Resolution regarding the balance of the funding of the Plan. These documents, together with the Settlement Agreement leave little doubt that a closing did take place where the Bonati Group mortgaged certain real properties and executed security agreements in favor of the Trustee, similar to what a borrower does with its lender. In light of the foregoing authority, this Court is satisfied that the Trustee was not responsible for the expenses associated with the closing and the Bonati Group shall reimburse the Trust for the amount paid out by the Trustee.

Regarding the attorneys' fees associated with the "asset disposition" description, this Court is satisfied that the services of counsel for the Trustee included more than just the closing associated with the Bonati Group. Inasmuch as the parties all agree that this Chapter 11 case was highly contentious and it is a miracle that there was

any type of resolution, this Court is satisfied that the post-confirmation fees incurred by counsel for the Trustee, in the complained amount of $30,650, for "asset disposition" are not excessive and are reasonable.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Bonati Group shall reimburse the Trustee the sum of $8,736.50 for the expenses associated with the closing within ten (10) days from the entry of this Order and shall file a certificate of compliance with this Court, with service to all parties of interest. It is further

ORDERED, ADJUDGED, AND DECREED that the post-confirmation fees incurred by counsel for the Trustee, that is the sum of $30,650 representing fees incurred for "asset disposition" be, and the same is hereby, determined to be reasonable. Inasmuch as Stearns Weaver has already been paid these fees, no further order is necessary.